**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| COLORS+ | ) CASE NO.: |
| 21430 Lorain Rd., Ste. 400 | ) |
| Fairview Park, OH 44126 | ) JUDGE |
| | ) |
| Plaintiff, | ) |
| v. | ) **VERIFIED COMPLAINT FOR** |
| | ) **PRELIMINARY AND PERMANENT** |
| COLORS+ COUNSELING, LLC | ) **INJUNCTIVE RELIEF AND DAMAGES** |
| 20525 Center Ridge Rd., #134 | ) |
| Rocky River, OH 44116 | ) (JURY DEMAND ENDORSED HEREON) |
| | ) |
| and | ) |
| | ) |
| KRISTEN PEPERA | ) |
| 1371 Marview Dr. | ) |
| Westlake, OH 44145 | ) |
| | ) |
| and | ) |
| | ) |
| LISA PEPERA | ) |
| 1371 Marview Dr. | ) |
| Westlake, OH 44145 | ) |
| | ) |
| Defendants. | ) |

Now comes Plaintiff Colors+, by and through undersigned counsel, and for its Verified Complaint against Defendants Colors+ Counseling, LLC, Kristen Pepera and Lisa Pepera hereby states as follows:

**JURISDICTION AND VENUE**

1.      This Verified Complaint is filed on behalf of Plaintiff Colors+ against Defendants Colors+ Counseling, LLC, Kristin Pepera and Lisa Pepera.

2.     Subject matter jurisdiction exists over this dispute by virtue of 28 U.S.C. 1331 because the complaint asserts claims arising under the Lanham Act, 15 U.S.C. §§ 1117, *et seq*.   The Court has discretion to exercise supplemental jurisdiction over the remaining claims.

3.     Personal jurisdiction exists over Defendants because each of them is either a natural person residing in the state of Ohio or an entity formed and existing under the laws of the state of Ohio.  The sole members of Defendant Colors+ Counseling are Kristen and Lisa Pepera who reside in Ohio.

4.     This district is the appropriate venue for this litigation because all parties reside and/or operate within the Northern District of Ohio at the addresses set forth in the caption of the complaint.

## THE PARTIES

5.     Plaintiff Colors+ ("Plaintiff" or "Colors+") is a 501(c)(3) non-profit corporation formed on January 12, 2018 and existing under the laws of the state of Ohio.

6.     Plaintiff Colors+ operates Colors+ Youth Center, an LGBTQ+ youth center whose purpose is to strengthen LGBTQ+ youth and allies by promoting individual and community wellness.

7.     Defendants Kristen (Kameron) and Lisa (Lennon) Pepera (they/them) co-founded Colors+.

8.     Colors+ has been governed by a board of directors since March 22, 2018, if not earlier.

9.     In August 2018, seven months after the founding of Colors+, the Peperas formed Defendant Colors+ Counseling, LLC as a for-profit limited liability company to provide for-profit mental health services, resources and education to the LGBTQ+ community and the community at large.

10.     At the time they formed Colors+ Counseling, LLC, Kristen and Lisa Pepera served as the board members of Colors+.  Kristen also served as executive director and Lisa served as deputy director of Colors+.  As a result of the positions held, the Peperas owed fiduciary duties to Colors+.

11.     Neither of the Peperas sought or received permission from Colors+ to use the mark "Colors+" in connection with their for-profit business.

### KRISTEN PEPERA LEAVES COLORS+ YOUTH CENTER WITHOUT AN EXECUTIVE DIRECTOR

12.     At all times relevant to this complaint, Colors+ leased its business premises from a third party and granted a license to Colors+ Counseling to use no more than 20% of the premises to conduct its business.

13.     At all times relevant to this complaint, Kristen Pepera was employed as the executive director of Colors+.

14.     Lisa Pepera was employed as the deputy director of Colors+ until their resignation in or about July 2023.

15.     On or about June 16, 2024, Kristen Papera emailed the Colors+ board and notified them for the first time that they would be taking medical leave from June 17. 2024 through July 8, 2024.  As the board later discovered, this leave had been planned well in advance of Kristen's notice to the board.

16.     On or about June 28, 2024, Kristen texted the board and stated that their leave would be extended for another three weeks (*i.e.* through July 2024).

17.     Kristen Pepera had made no arrangements for business coverage during their absence (*e.g.*, supervision of staff, programming coverage, grant writing/reporting, payroll, bill payment, etc.)  Accordingly, the President of the Colors+ Board of Directors, Colleen

Cronin, requested administrative access to Colors+ accounts, records and documents to ensure that the Youth Center could continue to operate.

18. Kristen refused to provide the requested access.

19. On July 7, 2024, the Colors+ board met to address the untenable situation. The board decided to hire an interim executive director to ensure continued operation of the Youth Center until Kristen could return to work, train on the responsibilities of an executive director, and resume the position of executive director.

20. Because there was no one to run the non-profit in the meantime, the board hired Shannon Scott-Miller on a temporary basis to manage grant obligations, advise the board and generally ensure that Colors+ programming would continue. Scott-Miller had served on the Board of Colors+ from April 2019 until becoming Community Engagement Manager in January 2022, later resuming the role of Deputy Director in August 2023 until her resignation in January 2024. Scott-Miller was the only person with intrinsic knowledge of programs and grant obligations aside from Kristen Pepera. The Colors+ board anticipated that Miller would help onboard the interim executive director once selected.

21. On or about July 8, 2024, the executive committee of the Colors+ board met privately with Kristen via Zoom to explain its decision to hire an interim executive director. The executive committee was clear that Kristen was not being replaced. The executive committee indicated that Kristen could resume their position as executive director after training.

22. That same day, Lisa Pepera called a meeting of Colors+ Counseling staff (many of whom were Colors+ Youth Center contractors) and falsely related that Colors+ had fired Kristen and replaced them with Scott-Miller.

23.   As a result of this misinformation, several contractors quit their work with Colors+, thereby jeopardizing Colors+'s ability to conduct programming and fulfill grant obligations.

24.   Kristen Pepera provided the same misinformation to Colors+'s contracted summer camp leader who immediately pulled out of the camp, leaving the Youth Center with no one to run the camp scheduled for the following week.

25.   Upon information and belief, the Peperas spread the same misinformation to community organizations, donors and grantors, causing Colors+ to lose donors and damaging Colors+'s reputation in the LGBTQ+ and non-profit communities.

26.   The board corrected the misinformation as best it could, but the damage had been done. Other contractors and donors pulled out of their involvement and support of Colors+, negatively affecting Colors+ finances and programming.

27.   On July 11, 2024, Lisa Pepera refused to allow a Colors+ Counseling therapist to keep her appointment with Scott-Miller's child, which prompted Scott-Miller's resignation from her temporary position and left Colors+ with no administrative leadership.  Because Scott-Miller has consented to the disclosure, Colors+ can add that the child was a long-term client and was being treated for suicidality.  Care was withdrawn without notice, referrals or a treatment plan, which constitutes patient abandonment.  Further, and in violation of their HIPAA obligations to the child, the Peperas disclosed their withdrawal of treatment with leaders and members of several other LGBTQ+ community organizations with which Scott-Miller was involved.  At least one such conversation occurred before the Peperas withheld treatment.

28.   Based on Kristen's malfeasance, the Colors+ board voted on July 11, 2024 to terminate their employment.

29.     Kristen was informed of the termination by letter dated July 15, 2024.

30.     On or about July 19, 2024, the last day of Youth Center summer camp, Lisa Pepera and three supporters arrived at the Colors+ office, unannounced and undetected.  They hid in Lisa's office until they thought everyone had left.  They then emerged from the office and removed waiting area furniture, artwork, electronics, office equipment and several boxes of unidentified items.

31.     Cronin and the summer camp leader were present while this was happening, and several of the Colors+ Counseling supporters became verbally aggressive and confrontational with her.

32.     As Lisa Pepera got into their car to leave, Cronin requested the Youth Center's mail and mailbox key.  Lisa ignored Cronin and drove off.

33.     Cronin had no idea how many Colors+ Counseling staff and contractors still had keys to the Colors+ building and/or codes to the security system.  Further, the Peperas were withholding administrative access to the building security account (which was paid for by the non-profit).  Having witnessed Colors+ Counseling vacate the office, Cronin changed the locks and contacted the security company to obtain control over the security system. Cronin had no other way to ensure the safety and security of Colors+ staff, youth and property.

34.     On or about July 20, 2024, the Peperas submitted a change-of-address request to the United State Post Office and had all mail (both Counseling's and the Youth Center's mail) re-directed to Counseling's new office in Rocky River.

35.     From July 20, 2024 to September 14, 2024, Colors+ received no mail.

36. Because Youth Center's mail was diverted during this time, Kristen's unemployment compensation application was granted and Youth Center's appeal rights expired before Colors+ knew that Kristen had filed an application.

37. Kristen should not have received unemployment compensation benefits because she was terminated with "just cause" as defined by unemployment regulations.

38. Counseling wrongfully withheld Youth Center's mail and prevented Colors+ from timely receiving donations, receipts, legal notices, tax forms, etc.

## PREVIOUS MISCONDUCT OF KRISTEN PEPERA

39. During their employment as executive director of Colors+, Kristen refused to be transparent with the board and refused its reasonable requests for financial records and receipts.

40. During their employment, Kristen treated Colors+ bank accounts as interchangeable with the bank accounts of Colors+ Counseling.

41. On June 28, 2023, during a conversation involving Kristen's unauthorized use of $5761.90 of Colors+ funds to install a security system at the Pepera home, Kristin informed board president Cronin that Colors+ 2022 taxes had not been filed. Kristen mentioned for the first time that Colors+'s accountant had resigned in December 2022 and no work had been done to close out 2022 finances or track 2023 finances.

42. This was the first notice to Colors+ of these serious problems.

43. Although Kristen and Cronin were discussing the Peperas' unauthorized home security system expense, Kristen never mentioned they also used another $2080 of Colors+ money to pay for security guards at their home.

44.     With no permission from the Colors+ board, Kristen paid Colors+ Counseling's quarterly taxes ($10,950) on June 21, 2023 with funds from Colors+. Colors+ Counseling reimbursed the unauthorized withdrawal on July 8, 2023, but Kristen refused the board's request that Colors+ Counseling prove it had sufficient funds in its account between June 21, 2023 and July 8, 2023 to pay those taxes.

45.     Without the board's permission, the Peperas paid themselves as independent contractors from Colors+ funds even though they were already being paid salaries to perform the same duties for which they paid themselves additional compensation.

46.     Additionally, Colors+ recently discovered that Counseling included its professional liability policy in the bundled insurance package Colors+ has been paying for. This was done without Colors+'s knowledge, consent or approval.

47.     Kristen failed consistently to log and provide receipts for in-kind donations and volunteer hours.

48.     While on paid medical leave in July 2024, Kristen also deleted more than 170 Colors+ documents from the Colors+ Google drives. Deleted documents included proposals, presentations, grant applications and contracts, employee records, donor information, meeting minutes and more.

49.     On information and belief, Kristen Pepera used their paid medical leave from Colors+ to facilitate Colors+ Counseling's move to its new offices in Rocky River.

### KRISTEN PEPERA FILES FRAUDULENT TRADEMARK APPLICATION ON BEHALF OF COLORS+ COUNSELING, LLC

50.     Subsequent to Kameron's termination, the board discovered that Colors+ Counseling (by Kristen Pepera) had applied on March 24, 2021 with the U.S. Patent and Trademark Office to register the Colors+ service mark in the name of Colors+ Counseling.

51.   Colors+ Counseling claimed first use of the mark in commerce by January 2021.

52.   The service mark was described in the application as:

[T]he word "COLORS" with a "+" sign next to it, all in a stylized rainbow font with the colors, from top to bottom, red, orange, yellow, green, blue and purple. Inside the plus sign on the right side is a small white triangle with arrow point[ing] to the right next to it in pink, light blue, brown, and black. "COLORS+" is outlined in black.

48.   The registered service mark appears as follows:



53.   Colors+ is the rightful owner of the mark registered by Colors+ Counseling and Kristen Pepera.

    a.   Colors+ was the first to use the mark in commerce to advertise its services to LGBTQ+ youth.

    b.   Kristen Pepera repeatedly affirmed that the mark belonged to Colors+.

    c.   Kristen Pepera never informed the board that it did not own the mark.

    d.   Kristen Pepera, while owing a fiduciary duty to Colors+, watched as Colors+ developed and cultivated goodwill around the mark.

    e.   Colors+ paid for the services of the designer who twice redesigned the mark in January 2021.

    f.   Colors+ paid the designer for the vector file of the mark on November 5, 2021.

    g.   On March 4, 2022, Colors+ paid the designer to add the registration mark (®) to its mark.

      h.   The three specimens attached to the service mark application show first use of the mark in commerce by Colors+ (specifically, Colors+ Youth Center) -- not Colors+ Counseling.

      i.   All three specimens were taken from www.colorsplus.org – the non-profit's website.

54.    In their application to register the mark with the United States Patent and Trademark Office, Kristen Pepera knowingly and falsely claimed ownership of the mark on behalf of Colors+ Counseling.

55.    Kristen Pepera knowingly and falsely claimed that Colors+ Counseling used the mark first in commerce.

56.    Kristen Pepera also knowingly and falsely described the services provided by Colors+ Counseling as "**Charitable services**, namely, promoting public awareness of LGBTQ+ related issues; Organizing and developing charitable projects that aim to provide a safe space to promote mental health and mind-body wellness, as well as educate others on LGBTQ+ youth issues; Promoting the interests of the lgbtq+ community by means of public advocacy."   The falsity of this description is evident from the description of services provided by Colors+ Counseling in its September 2024 trademark application to register the name "Colors+ Counseling."  That service mark application is available on the TSDR website                                                    at: https://tsdr.uspto.gov/#caseNumber=98736843&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch.. A true and correct copy is attached as Exhibit A.

57.   The charitable services identified in the 2021 trademark application are those provided by Colors+, not Colors+ Counseling, which is a for-profit company.

58.   Kristen Pepera knew these assertions were false because Kristen Pepera co-founded and operated both Colors+ and Colors+ Counseling.

59.   A true and correct copy of the 2021 service mark application is available on the TSDR website                                                                                            at: https://tsdr.uspto.gov/documentviewer?caseId=sn90600142&docId=SPE2021032710045 3&linkId=11#docIndex=9&page=1.  A true and correct copy is attached as Exhibit B.

**COUNT I – LANHAM ACT**
**(RECTIFYING THE TRADEMARK REGISTRY – TRANSFERRING OWNERSHIP OF THE REGISTERED MARK TO COLORS+)**

60.   Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

61.   15 U.S.C. Section 1119 permits this Court to "determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."

62.   Based on the foregoing authority, Colors+ seeks an order transferring ownership of the registered mark from Colors+ Counseling to its true owner, Colors+ or, in the alternative, cancelation of the mark registered by Colors+ Counseling and an order requiring the USPTO to register the mark to Colors+ when Colors+ files an application for same.

63.   As grounds for relief, Colors+ alleges that Colors+ Counseling and Kristen Pepera procured the trademark registration by fraud on the USPTO.

64.   By signing the registration application on behalf of Colors+ Counseling, Kristen Pepera and Colors+ Counseling willfully misrepresented that Colors+ Counseling was the owner of the service mark.

65. By signing the registration application on behalf of Colors+ Counseling, Kristin Pepera and Colors+ Counseling willfully misrepresented that "no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/servicers of such other persons, to cause confusion or mistake, or to deceive."

66. By signing the registration application on behalf of Colors+ Counseling, Kristen Pepera and Colors+ Counseling willfully misrepresented that, "to the best of [their] knowledge and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support."

67. By signing the registration application on behalf of Colors+ Counseling, Kristen Pepera and Colors+ Counseling willfully misrepresented that "to the best of [their] knowledge and belief, the facts recited in the application are accurate."

68. Kristen Pepera and Colors+ Counseling deceived the USPTO, consumers and others by misrepresenting in the trademark application that Colors+ Counseling was providing the charitable services provided by Colors+. In fact, Colors+ Counseling never provided any free counseling services.

69. Kristen Pepera and Colors+ Counseling knew when they filed the registration application that Colors+ was using, and first used, the service mark in commerce.  This knowledge is evident from the specimens attached to the application, which were derived from the colorsplus.org website and evidenced Colors+ Youth Center's use of the service mark in commerce.

70.   Kristen Pepera and Colors+ Counseling knew before and after they filed the registration application that Colors+ Counseling's use of the mark was likely to cause confusion or mistake, or to deceive consumers and others.

71.   Kristin Pepera and Colors+ Counseling knew when they filed the registration application that Colors+ Counseling's application had no evidentiary support, as is evident by their submission of specimens from the Colors+ website showing use of the mark by Colors+ Youth Center.

72.   These willful misrepresentations were material to the United States Patent and Trademark Office's decision to register the service mark.

73.   Kristen Pepera and Colors+ Counseling intended to deceive the United State Patent and Trademark Office to obtain registration of the Colors+ mark in the name of Colors+ Counseling and for its benefit.

74.   As a result of this fraud on the USPTO, Colors+ is entitled to an order correcting the USPTO registry to reflect that Colors+ is the registered owner of the service mark.

**COUNT II – LANHAM ACT**
**(RECTIFYING THE TRADEMARK REGISTRY -- CANCELING COLORS+**
**COUNSELING'S 2024 TRADEMARK APPLICATION)**

75.   Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

76.   15 U.S.C. Section 1119 permits this Court to "determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."

77.   Courts have held "[t]he district court's authority to 'determine the right to registration' and 'rectify the register' includes the power to decide disputes over trademark applications. *See e.g., BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 671 (9th Cir.

2024).  This is particularly true when the application involves potential infringement issues that are already being litigated in connection with a registered mark.

78.     In September 2024, Colors+ Counseling applied to the USPTO to register the words "Colors+ Counseling."

79.     As outlined above, Colors+ is the first user in commerce of the name "Colors+."

80.     As outlined above, Colors+ Counseling registered the name of its for-profit company with the Ohio Secretary of State without seeking permission or consent from Colors+.

81.     As outlined above, use of the word "Colors+" in the name of Colors+ Counseling is likely to cause, and has caused, confusion among consumers of LGBTQ+ services.

82.     Because the proposed mark is likely to cause confusion among consumers and has caused actual confusion, Colors+ requests an order terminating Colors+ Counseling's September 6, 2024 application to register its name as a trademark.

### COUNT III – LANHAM ACT VIOLATION (CIVIL LIABILITY FOR FALSE OR FRAUDULENT REGISTRATION)

83.     Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

84.     15 U.S.C. Section 1120 provides that "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

85.     The board first learned that Colors+ Counseling and Kristen Pepera fraudulently registered the service mark in the name of Colors+ Counseling in or about August 2024 when websites and social media platforms shut down Colors+ sites based on complaints from Defendants that Colors+ was infringing on its registered mark.

86.   As a result of Defendants' fraudulent registration of the Colors+ mark, Colors+ has incurred the following damages, and others, the value of which will be demonstrated at trial:

   a.   Colors+ Counseling eliminated Colors+'s online presence;

   b.   Colors+ was unable to communicate with LGBTQ+ youth, donors, grantors and community partners via its website or social media accounts – one of which – Instagram -- is Colors+'s primary method of communication and still unavailable to Colors+;

   c.   Colors+ incurred expenses for a website developer to create a new web page on an emergency basis;

   d.   Colors+ goodwill and reputation have been damaged by Colors+ Counseling's false statement to LGBTQ+ and non-profit communities that Colors+ is infringing on its trademark rights;

   e.   Colors+ has incurred, and will continue to incur, attorney fees and costs to vindicate its rights as the owner of the mark and to correct the USPTO register.

87.   Defendants are jointly and severally liable for Plaintiff's damages.

### COUNT IV – LANHAM ACT VIOLATION (SERVICE MARK INFRINGEMENT)

88.   Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

89.   Colors+ is the rightful owner of the service mark registered by Colors+ Counseling, LLC.

90.   Defendants willfully misappropriated Colors+'s service mark and willfully infringed Colors+'s service mark by using it in commerce.  For example:

   a.   Colors+ Counseling collaborates with StandWithTrans, a Michigan non-profit organization.

    b.  As part of its Trans Therapy Assistance Program, StandWithTrans refers consumers to its "trained, vetted mental health providers" in various states. Colors+ Counseling is advertised as one of its Ohio providers. https://standwithtrans.org/lgbtq-affirming-therapy-services/#Ohio.

    c.  Colors+ Counseling advertises its for-profit services through StandWithTrans using the mark owned by Colors+.

91. Colors+ Counseling's use of the mark in commerce is not just likely to cause confusion. It has caused actual confusion.

92. Colors+ has been damaged by Colors+ Counseling's infringement as described above and is entitled to damages which may include Colors+ Counseling's profits resulting from the infringement, a reasonable royalty, trebled actual damages (including loss of goodwill and the cost of corrective advertising), statutory damages, punitive damages, pre-judgment and post-judgment interest and attorney fees under 15 U.S.C. Section 1117(a).

93. Colors+ is also entitled to preliminary and permanent injunctive relief preventing Colors+ Counseling from using the service mark and denying Colors+'s right to use the mark.

**COUNT V -- LANHAM ACT VIOLATION (FALSE ADVERTISING)**

94. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

95. Defendants made false and misleading statements and representations designed to give the misimpression that Color+ Counseling was and is affiliated with, sponsored or endorsed by the non-profit organization, Colors+.

96. Defendants also made false and misleading statements and representations designed to give the misimpression that Colors+ is no longer providing services, and that Colors+ Counseling is the "surviving entity."

97. Defendants' statements and representations deceived and have the potential to deceive consumers and prospective consumers of both parties' services.  For example:

    a. Defendants' statements and representations had a material effect on Colors+ Youth Center customers and induced them to purchase counseling services from Colors+ Counseling on the strength of Colors+'s reputation.

    b. Defendants' statements and representations materially misled donors, grantors and community sponsors to provide donations, grants and perks which were intended to benefit Colors+.

98. Colors+'s goodwill and reputation has been damaged by Defendants' false advertising, as described above.

99. As a result, Defendants are jointly and severally liable to Colors+ for damages caused by the confusion, which includes, *inter alia*, trebled actual damages (i.e., lost donations, grants and perks, loss of goodwill and the cost of corrective advertising), the profits Defendants realized by virtue of the false advertising, a reasonable royalty, statutory damages, punitive damages, pre-judgment and post-judgment interest and attorney fees under 15 U.S.C. Section 1117(a).

## COUNT VI – BREACH OF FIDUCIARY DUTY

100. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

101. As founders, board members and executive officers of Colors+, Kristen and Lisa Pepera owed fiduciary duties to Colors+ of loyalty, trust and care.

102. Kristen and Lisa Pepera breached their fiduciary duties to Colors+ in the following ways, if not others:

a. Without the consent of the Colors+ board, Kristen and Lisa Pepera created a for-profit company using the Colors+ name;

b. Kristen and Lisa Pepera assured Colors+ that the service mark belonged to the non-profit corporation, stood by as Colors+ developed and cultivated good will surrounding the mark, and then misappropriated the mark to benefit Colors+ Counseling;

c. In an effort to profit from Colors+'s goodwill, Kristen and Lisa Pepera filed joint grant applications without the knowledge of the Colors+ board and misled grantors to believe that Colors+ Counseling was affiliated with and/or in partnership with the non-profit, Colors+;

d. Kristen and Lisa Pepera used Colors+ staff to perform work for Colors+ Counseling with no consideration to Colors+;

e. Kristen and Lisa Pepera operated their for-profit business using a subsidized non-profit email domain;

f. Kristen Pepera fraudulently registered a mark owned by Colors+;

g. Upon information and belief, Kristen Pepera used their paid medical leave from Colors+ to facilitate Colors+ Counseling's move to its new office;

h. Kristen and Lisa Pepera misappropriated Colors+ funds to benefit Colors+ Counseling and themselves, including using Colors+ funds without permission to pay for the installation of a security system at their home, to pay for personal security guards, and to pay the tax liability of Colors+ Counseling;

i. Kristen Pepera failed to give appropriate notice of their medical leave to the Colors+ board, which left Colors+ scrambling to operate;

     j.   Kristen and Lisa Pepera misrepresented the board's decision to hire an interim executive director while Kristen Pepera was on medical leave and purposefully alienated Colors+ contractors, donors and grantors;

     k.   Kristen Pepera failed to timely notify the board that its accountant quit in December 2022;

     l.   Kristen Pepera failed to timely notify the board that its 2022 taxes were not filed;

     m. Kristen Pepera failed to properly track Colors+'s financials once the accountant quit;

     n.   Without express or implied consent from Colors+, Kristen Pepera maliciously deleted important Colors+ documents while on paid medical leave; and

     o.   Other acts and omissions to be proven at trial.

103.   The foregoing breaches of fiduciary duty proximately caused Colors+ damage in the amount of the monies misappropriated, lost interest, tax penalties, lost grant opportunities, time spent to recover deleted files; time and money spent to continue programming after losing its contractors, and other ways to be determined at trial.

104.   In addition to compensatory damages, Colors+ is entitled to punitive damages and attorney fees because Kristen and Lisa Pepera acted with actual or implied malice toward Colors+.

## COUNT VII – FAITHLESS SERVANT DOCTRINE

105.   Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

106.   At all times relevant to this complaint, Kristen Pepera was employed as the executive director of Colors+ and Lisa Pepera was employed until July 2023 as deputy director of Colors+.

107. The positions held by the Peperas were positions of high trust and autonomy. The Colors+ board relied on the Peperas to perform their duties in the best interest of Colors+ and to refrain from self-dealing.

108. As alleged above, Kristen and Lisa acted in breach of their respective duties of loyalty to Colors+.

109. Colors+ compensated Kameron as executive director and Lennon as deputy director while they were breaching their duties of loyalty to Colors+.

110. As a result, Colors+ is entitled to recover all the compensation paid to Kristen and Lisa Pepera since January 2021, if not earlier.

## <u>COUNT VIII – CIVIL LIABILITY FOR CRIMINAL ACT<br>(DEPRIVATION OF U.S. MAIL – RC 2913.01)</u>

111. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

112. R.C. 2307.60 provides a civil cause of action for victims of a criminal act.

113. R.C. 2913.02 provides in relevant part that "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat; (5) By intimidation. (B)(1) Whoever violates this section is guilty of theft."

114. Defendants knowingly and wrongfully exerted control over Colors+'s mail without Colors+'s consent by submitting a change of address request with the United State Postal Service asking that all of Colors+ mail be forwarded to Colors+ Counseling's new office address.

115. Defendants intentionally, willfully and maliciously deprived Colors+ of its U.S. Mail for approximately two months between July and September 2024, which documents included donations and gift cards, a $1580 late-filing penalty notice and tax bill from the IRS, receipts for Colors+ donations, legal notices, and other important documents.

116. As evidence of Defendants' malice, Defendants offered to return the mail if Colors+ agreed not to review Colors+ deleted computer files without a court order.

117. As a result of this deprivation, Colors+ missed its deadline to appeal Kameron's unemployment claim, did not receive donations to the non-profit and failed to timely receive important legal notice, including without limitation, a summons and complaint filed by Colors+ Counseling.

118. As a result of this theft, Defendants are jointly and severally liable to Colors+ for compensatory damages to be determined at trial, punitive damages and attorney fees.

## COUNT IX – CIVIL LIABILITY FOR CRIMINAL ACT (DECEPTION– RC 2913.01)

119. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

120. R.C. 2307.60 provides a civil cause of action for victims of a criminal act.

121. Defendants intentionally, willfully and maliciously deceived consumers, grantors, donors, promoters of LGBTQ+ services, and the U.S. Patent and Trademark Office into believing that Colors+ Counseling was a non-profit service provider affiliated with Colors+.

122. As a result of this deception, Defendants augmented their earnings, obtained grants under false pretenses, accepted donations of money and perks intended for the non-profit, and jeopardized Colors+ non-profit status.

123.    Plaintiff is entitled to an accounting for all donations, grants and perks accepted by Defendants to determine whether they were intended for Plaintiff.  Additionally, Defendants are jointly and severally liable to Colors+ for their deception, including compensatory damages to be determined at trial, punitive damages and attorney fees.

## COUNT X – CIVIL LIABILITY FOR CRIMINAL ACT
## (THEFT– RC 2913.02)

124.    Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

125.    R.C. 2307.60 provides a civil cause of action for victims of a criminal act.

126.    Defendants Kristen and Lisa Pepera intentionally, willfully and maliciously misappropriated $2080 from Colors+ without its consent and used that money to pay for personal security guards at their home.

127.    Defendants Kameron and Lennon Pepera intentionally, willfully and maliciously misappropriated $5761.90 from Colors+ without its consent and used that money to pay for a security system at their home.  This money was eventually repaid.

128.    Defendants Kristen and Lisa Pepera intentionally, willfully and maliciously misappropriated more than $10,000 from Colors+ without its consent and used that money to pay Colors+ Counseling's tax bill.  This money was eventually repaid.

129.    As a result of these thefts, Colors+ is entitled to compensatory damages to be determined at trial, punitive damages and attorney fees.

## COUNT XI – CIVIL LIABILITY FOR CRIMINAL ACT
## (UNAUTHORIZED USE OF PROPERTY– RC 2913.02)

130.    Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

131.    R.C. 2307.60 provides a civil cause of action for victims of a criminal act.

132. R.C. 2913.04(A) prohibits a person from knowingly using or operating the property of another without consent.

133. R.C. 2913.04(B) also prohibits a person from knowingly gaining access to or causing access to be gained to any computer, computer system or computer network, without the consent or (or beyond the express or implied consent of) the person authorized to give consent.

134. While on paid medical leave, Kristen Pepera knowingly accessed Colors+ computer(s) and/or computer network to delete approximately 170 important Colors+ documents from the Colors+ Google drives.

135. Kristen Pepera did not have express or implied consent from Colors+ to delete Colors+'s files. They continued to access the Google files after termination and blocked the Colors+ Board from accessing the network and files. This resulted in an expensive legal negotiation to restore access.

136. Colors+ spent innumerable hours attempting to recover the files deleted by Kristen Pepera.

137. Kristen also refused to allow the Board to access the security system and security website and allowed unauthorized administrative access to Lisa Pepera, who was no longer employed by Colors+

138. As a result, Colors+ is entitled to compensatory damages to be determined at trial, punitive damages and attorney fees.

## COUNT XII – CIVIL LIABILITY FOR CRIMINAL ACT
## (TRADEMARK COUNTERFEITING– RC 2913.34)

139. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

140. R.C. 2307.60 provides a civil cause of action for victims of a criminal act.

141. R.C. 2319.34 prohibits a person from, *inter alia*, knowingly using a "counterfeit mark" in connection with services and from otherwise providing services with the knowledge that a counterfeit mark is used in connection with the provision of services.

142. Since August 2021, Defendants have knowingly used a counterfeit mark (*i.e.*, the service mark belonging to Colors+ but fraudulently registered by Colors+ Counseling) in connection with their offer of LGBTQ+ services.

143. Colors+ Counseling's use of the mark is not just likely to cause confusion, mistake or deceive others; it has caused actual confusion.

144. As a result, Colors+ is entitled to compensatory damages to be determined at trial, punitive damages and attorney fees.

**<u>COUNT XIII – DECEPTIVE TRADE PRACTICES – R.C. 4165.02)</u>**

145. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

146. Ohio Revised Code Chapter 4165 prohibits persons from engaging in deceptive trade practices, including, inter alia:

    a. Passing off services as those of another. *See* R.C. 4165.02(A)(1).

    b. Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of services. *See* R.C. 4165.02(A)(2).

    c. Causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another. *See* R.C. 4165.02(A)(3).

    d. Representing that services have sponsorship or approval that they do not have or representing that a person has sponsorship or approval, status, affiliation, or connection that the person does not have. *See* R.C. 4165.02(A)(7).

    e.  Disparaging the services or business of another by false representation of fact.

    See R.C. 4165.02(A)(10).

147.   Defendants willfully engaged in trade practices they knew were deceptive. For example:

    a.  Defendants registered Colors+ Counseling LLC with the Ohio Secretary of State as a for-profit company with the same name as Colors+, the non-profit corporation the Peperas founded.

    b.  Defendants and their employees repeatedly used Colorsplus.org email addresses in pursuit of their for-profit business, suggesting to others that Colors+ Counseling was affiliated with, sponsored or approved by the non-profit Colors+.

    c.  Paying no consideration to Colors+, Defendants used the non-profit's website, social media outlets and print materials to advertise Defendants' for-profit services and cultivate the misimpression that the for-profit company was affiliated with, sponsored or approved by Colors+.

    d.  Defendants misrepresented the relationship between Colors+ Counseling and Colors+ in grant proposals (e.g., AIDS Funding Collaborative, presentations, and partner website listings (*e.g.*, ADAMHS) to improve Colors+ Counseling's prospects of receiving consumers, donations and grant funds.

    e.  Defendants submitted Colors+ website specimens to the U.S. Patent and Trademark Office as "proof" that Colors+ Counseling was using the service mark in commerce.

    f.  In their application to register the service mark, Defendants misrepresented Colors+ charitable services as their own.

148.   As a result, Plaintiff is entitled to an accounting for all donations, grants and perks accepted by Defendants to determine whether they resulted from their deceptive trade practices.

149.   Defendants' willfully deceptive trade practices damaged Colors+'s reputation and goodwill, caused Colors+ to absorb expenses for a for-profit company, and caused other damages to be determined at trial.

150. Because Defendants willfully engaged in these trade practices with actual malice, knowing the trade practices were deceptive, Colors+ is entitled to injunctive relief, compensatory damages to be determined at trial, punitive damages and attorney fees.

## COUNT XIV – DEFAMATION

151. Plaintiff incorporates the foregoing allegations by reference as if fully re-written herein.

152. Defendants published false statements of fact about Plaintiff to third-parties like donors, grantors, community sponsors and the media.

153. These false statements included, without limitation, that:

   a. Plaintiff was defunct and/or no longer providing services;

   b. Plaintiff terminated Kristen Pepera when, in fact, it had not terminated them;

   c. Plaintiff terminated Kristen Pepera arbitrarily and capriciously and without just cause;

   d. Plaintiff infringed on Colors+ Counseling's registered trademark;

   e. Plaintiff engaged in unethical business practices.

154. Defendants had no privilege to make these false statements.

155. These false statements damaged Plaintiff's reputation and caused it to lose goodwill, donations, grants and perks for Youth Center consumers who are an elevated-risk, underserved community to whom Colors+ provides all services free of charge as a community non-profit organization.

156. Defendants published these defamatory statements knowingly, purposefully and with actual malice.

157. As a result, Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial, punitive damages and attorney fees.

WHEREFORE, Plaintiff Colors+ demands the following relief:

A.  An accounting of all donations, grant monies, and perks received by Defendants since June 1, 2024;

B.  Compensatory damages in an amount to be determined at trial, but which may include Colors+ Counseling's profits resulting from the service mark infringement, a reasonable royalty, trebled actual damages (including loss of goodwill and the cost of corrective advertising) and/or statutory damages;

C.  Pre-judgment and post-judgment interest

D.  Punitive damages;

E.  Attorney fees;

F.  Preliminary and permanent injunctive relief:

    a.  Prohibiting Defendants from using "Colors+" or "Colorsplus" in its company name ("Colors+ Counseling") or to otherwise identify itself or its services;

    b.  Prohibiting Defendants from using the registered Colors+ service mark;

    c.  Prohibiting Defendants from representing to any person or entity that Defendants (or any of them) owns the "Colors+" or "Colorsplus" name or registered service mark;

    d.  Prohibiting Defendants from pursuing registration with the U.S. Patent and Trademark Office of the name "Colors+ Counseling" or any derivation of the name "Colors+" or "Colorsplus";

    e.  Prohibiting Defendants from representing to any person or entity that Colors+ is defunct or otherwise not providing services to the LGBTQ+ community;

    f.   Prohibiting Defendants from misrepresenting themselves as providing services other than for profit;

    g.   Prohibiting Defendants from accepting any donations, grants or perquisites intended for any non-profit organization, including without limitation, Colors+;

    h.   Requiring Defendants to assist reasonably in the reinstatement of Colors+ websites and social media sites.

G.   A declaration that Colors+ is the true owner of the mark and an order correcting the USPTO register;

H.   A cancellation of Colors+ Counseling's September 6, 2024 application to register the name "Colors+ Counseling"; and

I.   Other legal and equitable relief deemed appropriate by the Court.

Respectfully submitted,

*/s/ Kathleen M. Minahan*
KATHLEEN M. MINAHAN (0064989)
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
(216) 831-0042/(216) 831-0542 - Fax
kminahan@meyersroman.com
*Counsel for Plaintiff Colors+*

### JURY DEMAND

Pursuant to FRCP 38, Colors+ hereby demands a trial by jury on all issues so triable.

*/s/ Kathleen M. Minahan*
KATHLEEN M. MINAHAN (0064989)

STATE OF OHIO         )

                               )                <u>AFFIDAVIT OF COLLEEN CRONIN</u>

COUNTY OF CUYAHOGA )

Now comes Colleen Cronin who, being first duly sworn according to law, deposes and states the following:

1.      I am over the age of 18.  I have personal knowledge of the facts contained in this affidavit and I am competent to testify to them.

2.      I am the President of the Board of Colors+ Youth Center.  I have held that position since approximately May 2023.  I have served on the Board since approximately July 2022.

3.      I have reviewed the allegations of this Verified Complaint and I believe them to be true and accurate.

FURTHER AFFIANT SAYETH NAUGHT.

_____
COLLEEN CRONIN

SWORN TO BEFORE ME, and subscribed in my presence this 15th day of January, 2024.

_____
NOTARY PUBLIC

SHAWNE BUCKNER
Notary Public, State of Ohio
My Commission Expires:
April 08, 2029

4905-9814-0175, v. 1