**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| COLORS+, | ) | CASE NO. 1:25-cv-00078 |
|     Plaintiff, | ) ) | JUDGE PAMELA A. BARKER |
| v. | ) ) | |
| COLORS+ COUNSELING, LLC, et al., | ) ) ) | **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
|     Defendants. | ) ) | |

In opposition to Colors+'s motion for preliminary injunction, Defendants make two unavailing assertions: (1) the related companies doctrine codified at 15 U.S.C. 1055 permitted Defendants to steal the Colors+ service mark and register it as their own; and (2) injunctive relief is barred by laches or acquiescence. Neither argument has merit.

### A. THE RELATED COMPANIES DOCTRINE DOES NOT APPLY.

15 U.S.C. 1055 provides:

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

15 U.S.C. 1127 defines "related companies" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." At least one court has observed that "[r]eliance on this definition presents a 'chicken or the egg' riddle, in that it addresses a situation where one

entity is using a mark, under the control of the *owner* of the mark. Of course, this is the very question presented by this case - who owns the mark?" *Gemmer v. Surrey Servs. for Seniors, Inc.*, 2010 U.S. Dist. LEXIS 132110, *51 (E.D. Pa. Sept. 7, 2010).

1. <u>Counseling Does Not Own the Mark</u>.

The Peperas contend that Lisa Pepera designed the Colors+ mark and they "always intended" both entities to use the mark. These contentions are meaningless for purposes of determining who owns the mark. "The fact that a party first conceived the mark and discussed it with others in the organization in anticipation of and in preparation for a subsequent use in trade does not constitute an 'open' use and therefore does not establish priority as of the date of these discussions." *La Maur, Inc. v. Int'l Pharm. Corp.*, 1978 TTAB LEXIS 57, *15; *see* 1 GILSON ON TRADEMARKS § 1.03 (2024) ("a trademark cannot *exist* apart from the business in which it is used. The trademark and the goodwill it represents are inseparable. Because there can be no goodwill for the trademark to symbolize without an ongoing business and corresponding use of the trademark, trademark rights in the United States, at least, are wholly dependent on use.")

What matters is who used the mark first in commerce.[1] Counseling has no evidence to show that it was the first user – hence its resort to the "related companies" doctrine.

---

[1] Counseling asserts that neither entity is engaged in activity affecting interstate commerce. Counseling is incorrect. By filing its application to register the mark, Counseling declared that it used the mark in interstate commerce. As will be proved at hearing, Colors+ affects interstate commerce as well. Colors+ solicits interstate donations from across the country via its website and Colors+ has provided virtual programming to out-of-state youth. *See Hall v. Bee Publrs., LLC*, 2009 U.S. Dist. LEXIS 15169, *3 ("The court agrees that the plaintiff must prove an impact on interstate commerce. * * * It is not clear, however, as argued by the defendants that the Sixth Circuit requires that the element be alleged in the complaint.")

2. Colors+ and Counseling are not "Related Companies."

The related companies doctrine "is an exception to the rule that a party must be the first to use a mark in commerce in order for it to establish prior rights in the mark. A party may be able to demonstrate ownership in a mark if it *controlled* the first user of the mark, even if it itself was not the first to actually *use* the mark." 2 GILSON ON TRADEMARKS § 6.04 (2024); *Letica Corp. v. Sweetheart Cup Co.*, 805 F. Supp. 482, 487 (E.D. Mich. 1992) ("A related company is any company which is controlled by the trademark owner as to the quality of the goods sold under the trademark.").

Colors+ and Counseling are not related companies. They are separate legal entities and always have been. Colors+ is a non-profit 501(c)(3) corporation; Counseling is a for-profit limited liability company. They are not partners; they are not joint venturers. In February 2021, [2] the Peperas owned Counseling, but they were employed by Colors+ in fiduciary positions as executive director and deputy director. As such, they both owed a duty of loyalty to Colors+, a duty to refrain from self-dealing and a duty to avoid conflicts of interest. (Exhibit A – Conflict of Interest Policy). The Peperas admittedly violated their fiduciary duties if, as they assert, they had "discussions…with fellow board members … and made it clear that … Counseling would be registering the trademark." (Doc. 15-7, PageID #218; Doc. 15-8, PageID #221.) See Exhibit A, Section 6 (no transactions can be undertaken with parties who have a conflict of interest unless: (1) the conflict is fully disclosed; (2) the person with the conflict of interest is excluded from the discussion and approval of such transaction; (3) a competitive bid or comparable evaluation exists; and (4) the board has determined that the transaction is in the best interest of the organization).

---

[2] "The related companies doctrine does not apply where the trademark at issue is not registered, except where an application to register it has been filed." 2 GILSON ON TRADEMARKS § 6.04 (2024). Thus, the only relevant circumstances are those that existed since February 2021 when Counseling filed its fraudulent application to register the service mark.

Likewise, there were no licensing agreements between Counseling and Colors+. Colors+ never paid royalties to Counseling. Colors+ never agreed that Counseling owned the mark or was entitled to control its use. If, as Counseling claims, Counseling licensed Colors+ to use the mark, Counseling breached the license when it contacted websites and social media sites in July 2024 to report that Colors+ was using the mark illegally. So how can Counseling assert, "There is nothing to restore to the Youth Center because nothing has been taken"? (Doc. 15, PageID #195.) Colors+'s entire online presence was removed because of Defendants' malicious false reports.

3. <u>Counseling Is Using the Mark in a Manner That Deceives the Public</u>.

Counseling argues that the related companies doctrine applies because "the two entities participated in joint marketing efforts…." (Doc. 15, PageID #193). If Counseling means that it took advantage of Colors+ to advertise its for-profit services for free in Colors+'s marketing materials, then the assertion is true. (See e.g., Doc. 15, PageID #218 – "Counseling also maintained a web page on the Youth Center's website, which used the mark.) With no consideration to Colors+, Counseling utilized Colors+'s website, domain name, marketing materials, employees and bank accounts to benefit the for-profit company. This misappropriation of resources violated the Peperas' fiduciary duties to Colors+ and constituted private inurement to the Defendants and jeopardized Colors+'s non-profit status. [3] It also confused (and continues to confuse) the public. Because Counseling never marketed itself independently of Colors+, the public was misled. Donors, grantors, community partners, youth and patients believed for years that Counseling was

---

[3] Treas. Reg. § 1.501(c)(3)-1(d)(1)(ii) provides: "An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests."

a program or entity operated by the non-profit. Their confusion persists to this day. A few weeks ago, the Cuyahoga County ADAMHS board sent Colors+ a 2025 grant agreement to execute on behalf of Counseling. (Exhibit B.)

Unless an injunction issues, confusion will persist because Counseling's use of the registered mark is fraudulent and deceptive. Notwithstanding its claimed ownership of the mark, Counseling has no right to use the registered mark in connection with services not described in the application.[4] 4 GILSON ON TRADEMARKS § 25.05 (2024) ("The Trademark Rules allow an applicant to amend its application to clarify or limit its identification of goods or services. It may not broaden the goods or services, however, nor may it substitute a different good or service for that in the original application.") Counseling is deceiving the public by using a mark expressly tied to charitable endeavors to market its for-profit counseling business.

4. Counseling Did Not Control Colors+'s Use of the Mark.

"[C]orporations do not become 'related companies' under the Trademark Act merely by virtue of having the same stockholders, directors or officers, or by virtue of occupying the same premises . . . ." *In re Raven Marine, Inc.*, 217 U.S.P.Q. 68, 69 (T.T.A.B. 1983). To establish ownership of the mark through the related company doctrine, the party claiming ownership "must have actually controlled [the] use of the mark with respect to the quality of the services provided."

Counseling never controlled Colors+'s use of the mark. Kristen Pepera may have handled Youth Center programming and decided how the mark would be used, but she did so as the paid executive director of Colors+, not as a representative of Counseling. Colors+ never agreed that

---

[4] Counseling described the trademarked services as "Charitable services, namely, promoting public awareness of LGBTQ+ related issues; Organizing and developing charitable projects that aim to provide a safe space to promote mental health and mind-body wellness, as well as educate other on LGBTQ+ youth issues; Promoting the interests of the lgbtq+ community by means of public advocacy."

Counseling owned the mark or that the mark was licensed to Colors+ at the whim, and subject to the control, of Counseling.

### B. NEITHER LACHES NOR ACQUIESENCE BARS PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF.

Even if laches applied, and it does not, it would not preclude injunctive relief in favor of Colors+.

> The Sixth Circuit characterizes the defense of "[l]aches [a]s a negligent and unintentional failure to protect one's rights." *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). However, the Sixth Circuit has expressly stated that, "[a]lthough laches precludes a plaintiff from recovering damages, it does not bar injunctive relief." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000) (citing *TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 349-50 (6th Cir. 1979); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 n.2 (6th Cir. 1985)). *See also Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002) (Laches "does not prevent plaintiff from obtaining injunctive relief.") Rather, when a plaintiff "seek[s] injunctive relief only, . . . laches [i]s inapplicable and . . . [defendants] must prove acquiescence." *Kellogg*, 209 F.3d at 569.

*Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1003 (W.D. Ky. 2017). Thus, the question turns to whether Colors+ "acquiesced" in Counseling's claimed ownership of the service mark.

"[B]oth laches and acquiescence require proof that the party seeking to enforce its trademark rights has unreasonably delayed pursuing litigation and, as a result, materially prejudiced the alleged infringer, [but] acquiescence requires more. Specifically, acquiescence is intentional. Acquiescence requires 'a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant.'" *Id.* at 1005 (internal citations and quotations omitted).

Colors+ did not acquiesce in Counseling's usurpation of its service mark. Where are the Colors+ meeting minutes evidencing Kristin Pepera's alleged discussion with the Board about

Counseling's intent to register the mark?  (Doc. 15-7, PageID #218.)  Why was she involved in those alleged discussions when the conflict policy prohibited it?  Where are the minutes showing that the Board determined it was in Colors+'s best interests to concede ownership of the mark to Counseling?  Where are the minutes showing that Colors+ accepted a license to use the mark under Counseling's control?  What was the term of the alleged license?  Was it renewable?  Was the license exclusive or non-exclusive?  What were the royalty payments?  What kind of control over the mark did Counseling allegedly retain?  None of these questions can be answered because there is no evidence to support Defendants' self-serving affidavits.

## CONCLUSION

The Peperas stole the Colors+ service mark from the very non-profit they founded.  Colors+ is not and never has been a "related company" to Counseling.  Neither did Colors+ acquiesce in Counseling's misappropriation of the mark.  For these reasons, and those discussed in its motion for preliminary injunction, Colors+ respectfully requests that the Court enjoin Defendants from their infringing use.

Respectfully submitted,

*/s/ Kathleen M. Minahan*
KATHLEEN M. MINAHAN (0064989)
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
(216) 831-0042/(216) 831-0542 - Fax
kminahan@meyersroman.com
*Counsel for Plaintiff Colors+*

## CERTIFICATE OF SERVICE

A copy of the foregoing Reply in Support of Motion for Preliminary Injunction was served this 17th day of February 2025 via the Court's electronic filing system on the following:

Angela M. Lavin, Esq.
amlavin@wegmanlaw.com
Jay R. Carson, Esq.
jrcarson@wegmanlaw.com
WEGMAN HESSLER VALORE
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131

*Attorneys for Defendants*