**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COLORS+, | ) | Case No.  1:25-CV-00078-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | **JOINT ANSWER OF DEFENDANTS** |
| | ) | **AND COUNTERCLAIM** |
| COLORS+ COUNSELING, LLC, ET AL., | ) | |
| | ) | (Jury Demand Endorsed hereon) |
| Defendants. | ) | |
| | ) | |

Now come Defendants Colors+ Counseling, LLC, Kameron aka Kameron Pepera, and Lennon aka Lennon Pepera, by and through the undersigned counsel, and for their Answer to Plaintiff's Complaint state as follows:

### JURISDICTION AND VENUE

1.  Defendants admit that the Verified Complaint was filed against them but deny any allegations or assertion or assertion in Paragraph 1 that the allegations in the Verified Complaint have merit.

2.  Defendants deny the allegations in Paragraph 2 of the Complaint.

3.  Defendants admit that the allegations in Paragraph 3 of the Complaint.

4.  Defendants admit that with regard to the allegations in Paragraph 4 of the Complaint, subject to appropriate subject matter jurisdiction, this district would be the appropriate venue for this litigation.

### THE PARTIES

5.  Defendants admit the allegations in Paragraph 5 of the Complaint.

6.  Defendants admit the allegations in Paragraph 6 of the Complaint

7.   Defendants admit the allegations in Paragraph 7 of the Complaint

8.   Defendants deny the allegations in Paragraph 8 of the Complaint.

9.   Defendants admit the allegations in Paragraph 9 of the Complaint.

10. Defendants admit that in August 2018, Kameron and Lennon Pepera served as board members of Color+, that Kameron Pepera also served as the President and Treasurer, that Lennon Pepera served as Vice President of Colors+, and that Kameron and Lennon Pepera owed fiduciary duties to Colors+.  Defendants deny the remaining allegations in Paragraph 10 of the Complaint.

11. Defendants deny the allegations in Paragraph 11 of the Complaint.

12. Defendants admit the allegations in Paragraph 12 of the Complaint.

13. Defendants admit that at all times relevant to the complaint, Kameron Pepera was employed by Colors+ but deny the remaining allegations in Paragraph 13 of the Complaint.

14. Defendants admit that at all times relevant to the complaint, Lennon Pepera was employed by Colors+ but deny the remaining allegations in Paragraph 14 of the Complaint.

15. Defendants admit that Kameron Pepera was placed on medical leave by her physician on Friday, June 14, 2024 and informed the Colors+ Board of the same on Sunday, June 16, 2024, and further admit that the leave commenced on Monday, June 17, 2024.  In further answering, Defendants lack knowledge sufficient to form a belief as to the truth of the allegations regarding the Board's knowledge and therefore denies the same.  Defendants deny the remaining allegations in Paragraph 15 of the Complaint.

16. Defendants admit that on or about June 28, 2024, Kameron Pepera sent, via text, the Board a physician note extending her leave to July 22, 2024. Defendants deny the remaining allegations in Paragraph 16 of the Complaint.

17. Defendants deny the allegations in Paragraph 17 of the Complaint.

18. Defendants deny the allegations in Paragraph 18 of the Complaint.

19. Defendants lack information sufficient to form a belief as to the truth of allegations in Paragraph 19 of the Complaint and, therefore, deny them.

20. Defendants admit that Shannon Scott-Miller served on the Board of Colors+ from April 2019 to January 2022 and against from August 2023 to January 2024, and that she was hired by Colors+.  Defendants lack information sufficient to form a belief as to the truth of the allegations regarding the Board's expectation and therefore deny them. Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

21. Defendants admit that Kameron Pepera was advised that she would be required to undergo training to resume her position.  Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 of the Complaint and therefore deny them.

22. Defendants deny the allegations in Paragraph 22 of the Complaint.

23. Defendants deny the allegations in Paragraph 23 of the Complaint.

24. Defendants deny the allegations in Paragraph 24 of the Complaint.

25. Defendants deny the allegations in Paragraph 25 of the Complaint.

26. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint and therefore deny them.

27. Defendants lack information sufficient to form a belief as to the truth of the allegations regarding Scott-Miller's purported consent and therefore deny them.  Defendants deny the remaining allegations in Paragraph 27 of the Complaint.

28. Defendants admit Kameron was terminated from her position at Colors+.  Defendants deny the remaining allegations in Paragraph 28 of the Complaint.

29. Defendants admit the allegations in Paragraph 29 of the Complaint.

30. Defendants admit that Lennon Pepera together with Colors+ Counseling staff removed personal property belonging to the Defendants from the office.  Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

31. Defendants admit that Colors+ staff were present, but deny the remaining allegations in Paragraph 31 of the Complaint.

32. Defendants admit that Lennon Pepera did not provide the mailbox key.  Defendants deny the remaining allegations in Paragraph 32 of the Complaint.

33. Defendants deny allegations that they withheld access to the building security account. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33 of the Complaint and therefore deny them.

34. Defendants admit that the Peperas submitted a change of address for Colors+ Counseling with the U.S. Post Office but deny the remaining allegations in Paragraph 34 of the Complaint.

35. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint and therefore deny them.

36. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint and therefore deny them.

37. Defendants deny the allegations in Paragraph 37 of the Complaint.

38. Defendants deny the allegations in Paragraph 38 of the Complaint.

39. Defendants deny the allegations in Paragraph 39 of the Complaint.

40. Defendants deny the allegations in Paragraph 40 of the Complaint.

41. Defendants admit that Kameron Pepara informed the board that an extension had been filed for their tax returns.  Defendants deny the remaining allegations in Paragraph 37 of the Complaint.

42. Defendants deny the existence of "serious problems" and deny the remaining allegations in Paragraph 42 of the Complaint.

43. Defendants deny the allegations in Paragraph 43 of the Complaint.

44. Defendants deny the allegations in Paragraph 44 of the Complaint.

45. Defendants deny the allegations in Paragraph 45 of the Complaint.

46. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint and therefore deny them.

47. Defendants deny the allegations in Paragraph 47 of the Complaint.

48. Defendants deny the allegations in Paragraph 48 of the Complaint.

49. Defendants deny the allegations in Paragraph 49 of the Complaint.

50. Defendants admit that Lennon Pepera created the trademark, that the Defendants paid for the legal fees to submit the trademark application and that a trademark application was submitted for Colors+ Counseling and Lennon Pepera's design.  Defendants deny the Board was unaware of the Colors+ Counseling trademark and deny the remaining allegations in  Paragraph 50 of the Complaint.

51. Defendants admit the allegations in Paragraph 51 of the Complaint.

52. Defendants admit the allegations in Paragraph 52 of the Complaint.

53. Defendants admit the allegations in the Paragraph misnumbered as 48 in the Complaint.

54. Defendants admit that Colors+ was invoiced to add the Progress flag to Lennon Pepera's original design based on Lennon Pepera's additional design work and that she included the trademark symbol to the Colors+ logo.  Defendants deny the remaining allegations in Paragraph 53 and subparagraphs 53.a. through i. of the Complaint.

55. Defendants deny the allegations in Paragraph 55 of the Complaint.

56. Defendants deny the allegations in Paragraph 56 of the Complaint.

57. Defendants deny the allegations in Paragraph 57 of the Complaint.

58. Defendants deny the allegations in Paragraph 58 of the Complaint.

59. Defendants admit the allegations in Paragraph 59 of the Complaint.

## COUNT I – LANHAM ACT

60. Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

61. The allegations in Paragraph 61 of the Complaint does not contain any factual allegations. To the extent a response is required, Defendants deny the same.

62. The allegations in Paragraph 62 of the Complaint does not contain any factual allegations. To the extent a response is required, Defendants deny the same.

63. Defendants deny the allegations in Paragraph 63 of the Complaint.

64. Defendants deny the allegations in Paragraph 64 of the Complaint.

65. Defendants deny the allegations in Paragraph 65 of the Complaint.

66. Defendants deny the allegations in Paragraph 66 of the Complaint.

67. Defendants deny the allegations in Paragraph 67 of the Complaint.

68. Defendants deny the allegations in Paragraph 68 of the Complaint.

69. Defendants deny the allegations in Paragraph 69 of the Complaint.

70. Defendants deny the allegations in Paragraph 70 of the Complaint.

71. Defendants deny the allegations in Paragraph 71 of the Complaint.

72. Defendants deny the allegations in Paragraph 72 of the Complaint.

73. Defendants deny the allegations in Paragraph 73 of the Complaint.

74. Defendants deny the allegations in Paragraph 74 of the Complaint.

## COUNT II – LANHAM ACT

75. Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

76. The allegations in Paragraph 76 of the Complaint does not contain any factual allegations. To the extent a response is required, Defendants deny the same.

77. The allegations in Paragraph 77 of the Complaint does not contain any factual allegations. To the extent a response is required, Defendants deny the same.

78. Defendants admit the allegations in Paragraph 78 of the Complaint.

79. Defendants deny the allegations in Paragraph 79 of the Complaint.

80. Defendants deny the allegations in Paragraph 80 of the Complaint.

81. Defendants deny the allegations in Paragraph 81 of the Complaint.

82. Defendants deny the allegations in Paragraph 82 of the Complaint.

## COUNT III – LANHAM ACT

83. Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

84. The allegations in Paragraph 84 of the Complaint does not contain any factual allegations. To the extent a response is required, Defendants deny the same.

85. Defendants deny the allegations in Paragraph 85 of the Complaint.

86. Defendants deny the allegations in Paragraph 86 of the Complaint.

87. Defendants deny the allegations in Paragraph 87 of the Complaint.

## COUNT IV – LANHAM ACT

88. Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

89. Defendants deny the allegations in Paragraph 89 of the Complaint.

90. Defendants deny the allegations in Paragraph 90 of the Complaint and further denies that any uses referenced in subparts a. through c. are improper.

91. Defendants deny the allegations in Paragraph 91 of the Complaint.

92. Defendants deny the allegations in Paragraph 92 of the Complaint.

93. Defendants deny the allegations in Paragraph 93 of the Complaint.

## COUNT V – LANHAM ACT

94. Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

95. Defendants deny the allegations in Paragraph 95 of the Complaint.

96. Defendants deny the allegations in Paragraph 96 of the Complaint.

97. Defendants deny the allegations in Paragraph 97 (and related subparts) of the Complaint.

98. Defendants deny the allegations in Paragraph 98 of the Complaint.

99. Defendants deny the allegations in Paragraph 99 of the Complaint.

## COUNT VI – BREACH OF FIDUCIARY DUTY

100. Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

101. Defendants deny the allegations in Paragraph 101 of the Complaint.

102. Defendants deny the allegations in Paragraph 102 (and related subparagraphs) of the Complaint.

103. Defendants deny the allegations in Paragraph 103 of the Complaint.

104. Defendants deny the allegations in Paragraph 104 of the Complaint.

## COUNT VII – FAITHLESS SERVANT DOCTRINE

105.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

106.     Defendants admit that Defendants Kameron and Lennon Pepera founded, and during certain periods of time relevant to this Complaint, were employed by Color+ as Executive Director and Deputy Director. Defendants deny the remaining allegations in Paragraph 106 of the Complaint.

107.     Defendants admit the allegations in Paragraph 107 of the Complaint.

108.     Defendants deny the allegations in Paragraph 108 of the Complaint.

109.     Defendants admit they were compensated during their employment but deny the remaining allegations in Paragraph 109 of the Complaint.

110.     Defendants deny the allegations in Paragraph 110 of the Complaint.

## COUNT VIII – CIVIL LIABILITY FOR A CRIMINAL ACT

111.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

112.     Paragraph 112 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 112.

113.     Paragraph 113 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 113.

114.     Defendants deny the allegations in Paragraph 114 of the Complaint.

115.     Defendants deny the allegations in Paragraph 115 of the Complaint.

116.     Defendants admit that they offered to return Plaintiff's mail and that they made requests to protect the protected medical information contained within the computer files but deny the remaining allegations in Paragraph 116 of the Complaint.

117.     Defendants deny the allegations in Paragraph 117 of the Complaint.

118.     Defendants deny the allegations in Paragraph 118 of the Complaint.

## COUNT IX – CIVIL LIABILITY FOR A CRIMINAL ACT

119.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

120.     Paragraph 120 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 120.

121.     Defendants deny the allegations in Paragraph 121 of the Complaint.

122.     Defendants deny the allegations in Paragraph 122 of the Complaint.

123.     Defendants deny the allegations in Paragraph 123 of the Complaint.

## COUNT X – CIVIL LIABILITY FOR A CRIMINAL ACT

124.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

125.     Paragraph 125 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 125.

126.     Defendants deny the allegations in Paragraph 126 of the Complaint.

127.     Defendants deny the allegations in Paragraph 127 of the Complaint.

128.     Defendants deny the allegations in Paragraph 128 of the Complaint.

129.     Defendants deny the allegations in Paragraph 129 of the Complaint.

## COUNT XI – CIVIL LIABILITY FOR A CRIMINAL ACT

130.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

131.     Paragraph 131 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 131.

132.     Paragraph 132 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 132.

133.     Paragraph 131 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 133.

134.     Defendants deny the allegations in Paragraph 134 of the Complaint.

135.     Defendants deny the allegations in Paragraph 135 of the Complaint.

136.     Defendants deny that Kameron deleted files and lack knowledge sufficient to form a belief as to the truth of the time spent by Colors+ to "recover" files. Defendants deny the remaining allegations in Paragraph 136.

137.     Defendants deny the allegations in Paragraph 137 of the Complaint.

138.     Defendants deny the allegations in Paragraph 138 of the Complaint.

## COUNT XII – CIVIL LIABILITY FOR A CRIMINAL ACT

139.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

140.     Paragraph 141 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 140.

141.     Paragraph 142 of the Complaint does not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 141.

142.     Defendants deny the allegations in Paragraph 142 of the Complaint.

143.     Defendants deny the allegations in Paragraph 143 of the Complaint.

144.     Defendants deny the allegations in Paragraph 144 of the Complaint.

## COUNT XIII – DECEPTIVE TRADE PRACTICES

145.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

146.     Paragraph 146 and its related subparts of the Complaint do not set forth any factual allegations.  To the extent a response is required, Defendant denies the allegations in Paragraph 146.

147.     Defendants deny the allegations in Paragraph 147 and its subparts of the Complaint.

148.     Defendants deny the allegations in Paragraph 148 of the Complaint.

149.     Defendants deny the allegations in Paragraph 149 of the Complaint.

150.     Defendants deny the allegations in Paragraph 150 of the Complaint.

## COUNT XIII – DEFAMATION

151.     Defendants re-assert each of the foregoing admissions and denials as if fully rewritten herein.

152.     Defendants deny the allegations in Paragraph 152 of the Complaint.

153.     Defendants deny the allegations in Paragraph 153 and its subparts of the Complaint.

154.     Defendants deny making false statements and deny the remaining allegations in Paragraph 154 of the Complaint.

155.     Defendants deny the allegations in Paragraph 155 of the Complaint.

156.     Defendants deny the allegations in Paragraph 156 of the Complaint.

157.     Defendants deny the allegations in Paragraph 157 of the Complaint.

## AFFIRMATIVE DEFENSES

1. Either one or more of the causes of action asserted in Plaintiff's Complaint fails to state a claim upon which relief can be granted against Defendants.

2. Plaintiff is not entitled to its claimed trademark protection under either the Lanham Act, Unfair and Deceptive Trade Practices Act, common law trademark infringement and unfair competition, or otherwise.

3. Plaintiff's Complaint is barred by the Affirmative Defenses of estoppel, laches, waiver, and unclean hands.

4. Plaintiff's Complaint is barred by the doctrine of assumption of risk as this affirmative defense applies to the conduct of Plaintiff and/or its employees and agents.

5. Imposition of punitive or exemplary damages would violate the Interstate Commerce clause of the United States Constitution.

6. Imposition of punitive or exemplary damages would violate the United States Constitution's Eighth Amendment Prohibition against excessive fines.

7. Imposition of punitive or exemplary damages would violate the Due Process of Law Clause of the United States Constitution.

8. Imposition of punitive or exemplary damages would violate the Equal Protection Clause of the United States Constitution.

9. Imposition of punitive or exemplary damages is not appropriate in a case where Plaintiff has failed to prove outrageous conduct by Defendants by clear and convincing evidence.

10. Plaintiff has failed to mitigate the damages it seeks to recover from Defendants.

11. Plaintiff's claims are frivolous and intended to harass Defendants in violation of Ohio Rev. Code §2323.51.

12. Plaintiff has failed to perfect service upon Defendants.

13. Being mindful of the provisions of Rule 11 of the Federal Rules of Civil Procedure and other applicable rules and laws, Defendants reserve the right to amend this Answer to add to, modify, or delete from it additional defenses, as future circumstances may warrant.

WHEREFORE, having fully answered, Defendants Colors+ Counseling, LLC, Kameron Pepera and Lennon Pepera pray that Plaintiff's Complaint be dismissed with prejudice at Plaintiff's costs, that Defendants go hence forth without further costs or delay; that the Defendants be awarded attorney fees, costs, and such additional relief as this Court may deem just and proper; and in all other respects that Defendants go free from any liability to Plaintiff.

## COUNTERCLAIM OF DEFENDANT COLORS+ COUNSELING LLC

For their Counterclaims against Colors+, Colors+ Counseling LLC, Kameron Pepera and Lennon Pepera state as follows:

1.  Defendants Kameron and Lennon Pepera are both licensed professional counselors who have made service to Cleveland's LGBTQ+ community, particularly LGBTQ+ youth, their life's work.

2.  Through their counseling practices and lived experience, the Peperas knew that LGBTQ+ youth had mental health needs that counseling alone could not meet. Chief among those unmet needs was the need for a safe space.  The Peperas recognized the benefit of creating a place where LGBTQ+ youth could interact with others experiencing the same struggles.

3.  In 2018, the Peperas created two organizations that would work in tandem to meet those unmet needs, marrying access to clinical counseling services with  of LGBTQ+ youth. The Peperas intended for the two organizations to share resources, cooperate in programming and generally work together to meet the needs of their constituents.

4.   Kameron Pepera filed articles of incorporation with the Ohio Secretary of State in January, 2018 and obtained IRS approval for the Colors+ Youth Center's ("Youth Center") nonprofit status in May 2018. (ECF 15-1, copy of the IRS Letter; ECF 15-2, Colors+ articles of incorporation.) The Youth center opened for business on January 23, 2019.

5.   On August 18, 2018, the Peperas incorporated Colors+ Counseling LLC ("Counseling"), their for-profit counseling practice. (ECF 15-3, Colors+ Counseling LLC's Articles of Incorporation.) Counseling begin seeing patients virtually in September 2018 and in person in December 2018.

6.   From the beginning, the Peperas created the two organizations to work in tandem to serve the need of Cleveland's LGBTQ+ community, particularly youth struggling with both the challenges inherent to adolescence and gender fluidity.

7.   Although the Peperas always intended the two organizations to work together to provide one-stop, wrap around services of LGBTQ+ youth, certain government regulations and contractual provisions made it prudent, if not necessary, to operate through two related entities rather than a single corporation. For example, Counseling was required under HIPPAA to safeguard client health information. And because most of the Youth Center's services were not eligible for insurance reimbursement, it made sense to create a nonprofit to raise money for and fund those services.

8.   Kameron and Lennon Pepera each served as members of the Youth Center's Board of Directors when it was founded.

9.   Lennon Pepera voluntarily resigned from the Youth Center's Board in 2020 in order to take on a paid employment position with the Youth Center as Co-Director (and later, Deputy Director).

Lennon remained in this position until she resigned in August 2023 to devote more time to counseling.

10. Kameron resigned from the Board in November 2020 in order to serve as Co-Director (and later, Executive Director) of the Youth Center.  She remained in that position until she was demoted and ultimately terminated by the Board.

11. In July of 2024, a dispute arose between Kameron Pepera and the board regarding Kameron taking a leave of absence due to a medical condition.  As a result of this dispute, the Board removed Kameron from her role as Executive Director on July 11, 2024, and days later, on July 14, 2024, terminated her employment.

## CREATION OF THE MARK

12. In 2017, Lennon Pepera created a logo for the Youth Center which the Peperas intended to be used by Counseling as well as on the Youth Center's website and marketing material. Subsequently, the Peperas had the logo digitized by a designer.

13. In November 2018, the Peperas sent the logos below to their designer, Sabrina Kogan:



14. The Peperas sent the above logo designs to Sabrina Kogan to ask her to add the words "Youth Center" to the logo, so the modified version could be used with the Youth Center's marketing materials and on its website.

15. Lennon did not assign any rights in these designs to the Youth Center for its exclusive use, but rather, allowed the Youth Center to use the design while incorporating the same logo for

Counseling's marketing materials.  The Youth Center was plainly aware of this dual use because at the time, the Peperas controlled both entities.

16. In 2021, Lennon created an add-on to the logo to incorporate the Progress flag, shown below, and again provided the designs to Sabrina Kogan:

   

17. Again, Lennon did not assign any exclusive rights in the new design to the Youth Center, but rather as the Peperas had always intended, allowed the Youth Center to use the design but incorporating the same logo into Counseling's marketing materials as well.

18. In February 2021, Counseling retained attorney Suzann Moskowitz to prepare and file for a trademark registration of the Colors+ logo that incorporated Lennon's additional design of the plus sign with the Progress flag.

19. The Peperas made clear to their fellow board members that Counseling had engaged Attorney Moskowitz to register the mark, and that while Counseling would be registering the trademark, they intended that he mark  would also be used by both entities.

20. None of the Youth Center's other board members objected.  Indeed, the Board members all understood Counseling's registration and use of the mark to be consistent with the goal of operating both organizations operating hand-in-hand to provide.   Accordingly, Counseling moved

forward with its application, paid for the legal fees and filing fees for the trademark, and as discussed, allowed the Youth Center to use the mark. (ECF 15-4, legal bill for the registration.)

21. Kameron Pepera filed the trademark application, on behalf of Counseling on March 21, 2021.  The application was approved and registered on February 22, 2022. (ECF 15-5, trademark registration.)  Later, in 2022, designer Sabrina Kogan updated the Youth Center's logo to incorporate Counseling's registered mark.

22. Throughout the different iterations and uses of the logos, the Peperas' goal remained the same: to create a mark for use by both entities that would reinforce in the public mind that the two organizations were in fact related and under common leadership, worked together to provide complementary services.

23. The Youth Center and Counseling were symbiotic, with both organizations led by the Peperas. As one press account put it,  the Peperas created a "two-for-one organization" which could  provide the full spectrum of services—clinical counseling as well as the safe space and social opportunities to reinforce it—LGBTQ+ youth.  See  Leslie Kouba, *Colors+ Youth Center offers a safe haven for LGBTQ+ kids, under attack by Ohio's proposed "Don't Say Gay Law*, Cleveland.com, April 20, 2022, https://www.cleveland.com/opinion/2022/04/colors-youth-center-offers-a-safe-haven-for-lgbtq-kids-under-attack-by-ohios-proposed-dont-say-gay-law-leslie-kouba.html (accessed 2/8/25).

24. The Youth Center began incorporating aspects of the trademark into its logo as early as 2018.  Counseling also incorporated the 'plus sign with Progress flag" into its logo and began using it on its website and other materials as early 2021.

25. The Youth Center was at all times aware that Counseling had registered the mark and was using it for its marketing materials.  The Youth Center always knew that its use was not exclusive.

26. As of the filing of this Counterclaim neither party is using the mark as registered. According to the registration, the mark consists of the word colors in capital letters in a rainbow/pride motif (Lennon Pepera's original logo design), with a plus sign, also in the rainbow motif but incorporating the pennant Progress flag (Lennon Pepera's revised design).  See ECF 15-5, Trademark Registration.

27. Currently, both organizations are using the words "Colors+" in plain text with  the plus sign element from the mark, but not the registered mark itself. See Youth Center's website, https://www.colorsplus.org/ (accessed Feb. 9, 2025) and Counseling's website, https://www.colorscounseling.org/ (accessed Feb. 9, 2025).

### THE YOUTH CENTER FORCED COUNSELING TO RELOCATE

28. In July 2021, the Youth Center entered into a lease agreement with Fairview Lorain Ltd. to lease a combined space for use by the Youth Center and Counseling ("the premises").  Kameron and Lennon Pepera personally guaranteed the Youth Center's financial obligations under the lease.

29. At the time of signing the lease, the Youth Center and Counseling entered into an oral agreement by which Counseling would sublease space for its counseling services.  This sublease arrangement allowed Colors+ to generate a regular monthly income.

30. Upon occupying the new leased space, the Peperas personally cleaned and stocked the premises with supplies necessary for the kitchen area and additional supplies to by used by both the Youth Center and Counseling for programs, events and general day-to-day needs of their staff.

31. The Peperas also purchased a mailbox that could only be opened with key for use by both Counseling and the Youth Center.  The locking feature on the mailbox was significant as it enabled Counseling to ensure the safety and protection of confidential, medical information related to its

clients, and it was one of various security protocols used by Counseling to comply with its HIPAA obligations.

32. This arrangement continued without issue until the summer of 2024.

33. In mid-July 2024, Counseling staff, including Lennon Pepera, began noticing that the Youth Center staff accessing the mailbox were not properly distributing Counseling mail, including mail containing protected health information, directly to Counseling staff.  Indeed, Counseling staff frequently found such mail in various locations in the Youth Center.

34. During this time, Counseling staff also suspected that Youth Center staff had searched their offices, completely disregarding the need to maintain the confidentiality of the protected health information that may be stored there.

35. On or about July 19, 2024, Lennon Pepera and other members of the Counseling staff moved certain personal items and files containing protected health information out of the building.

36. Immediately thereafter, the Youth Center changed the locks, preventing Counseling from conducting further  business from the premises.  Indeed, on the morning of July 20, 2024, one of Counseling's staff members was scheduled to see a patient but could not access the premises because the locks had been changed.

37. Having been locked out of their offices, Counseling was forced to relocate its offices.

38. But because mail was still being sent to the Fairview Park address, they relied on continued access to the joint mailbox.  And, fearing improper access by Youth Center staff, the Peperas refused to turn over their keys. In response, the Youth Center simply destroyed the mailbox.

39. Having been locked out of the Youth Center building, Counseling and the Peperas have been denied access to recover personal belongings.

40. Having been forced to relocate, Counseling attempted to process an address change with the U.S. Postal Service.  Unbeknownst to anyone at Counseling, the Postal Service routed all mail from the Fairview Park address, including Youth Center mail, to its new location.

41. In response, the Youth Center knowingly and intentionally had all mail from Counseling's new address, including Counseling's mail, rerouted back to the Fairview park location.

**THE YOUTH CENTER HAS ACTIVELY ATTEMPTED TO DAMAGE COUNSELING AND THE PEPERAS' REPUTATION AND GOOD WILL IN THE COMMUNITY.**

42. After terminating Kameron from her position with the Youth Center, Colleen Cronin ("Cronin"), the Board President and Acting Executive Director, has intentionally attempted to interfere with community support for Counseling.

43. On Saturday,  July 13, 2024, Colleen Cronin, acting on behalf of the Board of Colors+ published an email to all Colors+ employees and Colors+ Board members, Counseling staff and at least one individual outside of both organizations.

44. The email falsely accused Counseling, and by extension, the Peperas, of withdrawing therapy from a patient "without notice or discussion."

45. The email goes on to characterize the alleged withdrawal of medical care as "callous and unethical."

46. Cronin, in her capacity as President of the Board and Acting Director of the Youth Center has contacted other LGBTQ+ organizations and attempted to discourage them from working with Counseling and/or the Peperas.

47. On at least one occasion, Cronin claimed to an LGBTQ+ community director that working in cooperation with Counseling or the Peperas would create confusion in the LGBTQ+ community.

48. Even after the filing of this lawsuit, Cronin has made unsolicited posts on Facebook in an effort to interfere with public support for Counseling and the Peperas.

## COUNT 1: DECLARATORY JUDGMENT

49. Counseling hereby incorporates by reference the allegations contained in Paragraphs 1-46 of the Counterclaim as if fully restated here.

50. Counseling's trademark is valid and enforceable.

51. This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 15 U.S.C. § 1125(a)(1)(A), 28 U.S.C. § 1331, and 28 U.S.C. § 1338 over counterclaims arising under the trademark laws of the United States, 15 U.S.C. §§ 1051, et seq. and under 28 U.S.C. §§ 2201-2202 as Defendants' first counterclaim seeks declaratory judgment that Counseling is the proper and rightful owner of the trademark and that Colors+ Lanham Act claims are invalid and unenforceable.

52. This Court has personal jurisdiction over Colors+ because Colors+ initiated the present suit in this judicial district.

53. Venue is proper under 18 U.S.C. § 1391(c).

54. Lennon Pepara designed a stylized design for the "Colors+" trademark, and Counseling registered a trademark in the stylized design for Colors+. (See ECF 15-5.)

55. Counseling is entitled to protection of its Ohio and common law trademark rights in the "Colors+" trademark.

56. The Youth Center has wrongfully, and in bad faith, asserted said trademark against Colors+ Counseling LLC, which has created a justiciable controversy and interference with Counseling's business.

57. This Court has the power to determine the right to registration pursuant to 15 U.S.C. § 1119.

58.  The Youth Center is not the registrant of the trademark, had no involvement in the design, development or registration of the trademark.

59. The Youth Center is unable to demonstrate a valid first use of "Colors+" in interstate commerce.

60. Counseling and its members, Kameron and Lennon Pepera, on the other hand, are responsible for the design, registration and first use of the mark.

61. Through their efforts both on behalf of Counseling and the Youth Center, the Peperas are primarily responsible for the branding used in conjunction with the trademark.

62. The Youth Center is unable to demonstrate any confusion between its use and Counseling's use.

63. Counseling is entitled to a declaration that is entitled to a declaration that Counseling's trademark is valid and enforceable.

## COUNT TWO:  UNFAIR COMPETITION

64. Counseling incorporates the allegations contained in Paragraphs 1-61 of the Counterclaim as if fully restated here.

65. The Youth Center has undertaken various efforts designed to harm the Peperas and Counseling's business, including but not limited to attempting to discourage community leaders from working with Counseling and the Peperas and making unsolicited comments on social media.

66. The Youth Center has willfully, knowingly, and in bad faith, asserted that Counseling's registration of the Colors+ trademark is fraudulent and is attempting to cancel Counseling's registration when in fact the Youth Center knew and benefited from Counseling's and the Peperas' design, branding, trademark registration and there is no evidence of a likelihood of confusion.

67. As a result of said the Youth Center's conduct, Counseling has suffered damage in the form of time and energy spent responding to its attacks, damage to Counseling's good will and reputation and additional fees and expenses in an amount to be determined at trial.

68. The Youth Center's conduct is willful, malicious, or with reckless disregard for the rights of Counseling.

69. The Youth Center is liable to Counseling for compensatory damages in an amount to be determined, punitive damages, attorneys' fees, and costs.

<u>**COUNT THREE:  WRONGFUL EVICION**</u>

70. Counseling and the Peperas incorporate the allegations contained in Paragraphs 1-67 of the Counterclaim as if fully restated here.

71. Without any notice, the Youth Center knowingly and intentionally interfered with Counseling's possession, use and enjoyment of the premises and forced Counseling to relocate its office.

72. The Youth Center denied Counseling access to the premises without any notice.

73. As a result of the Youth Center's conduct, Counseling was unable to service clients until a new location could be found.

74. The Youth Center's conduct is willful, malicious, or with reckless disregard for the rights of Counseling.

75. The Youth Center is liable to Counseling for compensatory damages in an amount to be determined, punitive damages, attorneys' fees, and costs as a result of its conduct to evict Counseling from the premises.

<u>**COUNT FOUR:  CIVIL LIABILITY UNDER R.C. 2307.60**</u>

76. Counseling and the Peperas incorporate the allegations contained in Paragraphs 1-73 of the Counterclaim as if fully restated here.

77. The Youth Center's actions in destroying the mailbox used for Counseling's mail and for intentionally rerouting Counseling's mail is a crime.  Indeed, under federal law, the knowing and willful obstruction of the passage of mail is a violation of federal law.  *See* 18 U.S.C. 1701.

78. R.C. 2307.60 provides a civil cause of action for victims of a criminal act.

79. At the time the Youth Center failed to properly distribute Counseling's mail, it was aware that Counseling receives and is required to protect the health information of its clients and constituents.

80. At the time the Youth Center destroyed the locked mailbox used to collect Counseling's mail, it was aware that Counseling receives and is required to protect the health information of its clients and constituents.

81. At the time the Youth Center knowingly took steps to reroute Counseling's mail, it was aware that Counseling receives and is required to protect the health information of its clients and constituents.

82. The Youth Center continues to receive mail intended for Counseling, including mail that contains protected health information.

83. Knowing that Counseling's mail can contain confidential, protected health information, Youth Center opens Counseling's mail prior to forwarding the same to Counseling in reckless disregard for the confidentiality of the information contained therein.

84. The Youth Center's interference and mishandling of Counseling's mail is knowing, intentional and done with malice.

85. The Youth Center is liable to Counseling for compensatory damages in an amount to be determined, punitive damages, attorneys' fees, and costs as a result of its conduct to evict Counseling from the premises.

## COUNT FIVE:  DEFAMATION

86. Counseling and the Peperas incorporate the allegations contained in Paragraphs 1-83 of the Counterclaim as if fully restated here.

87. The allegations in the July 2024 email sent by Colors+ are false and were made maliciously with the intent of harming Counseling and the Peperas in their business.

88. Further, false claims that medical providers have acted unethically are per se defamatory.

89. Counseling and the Peperas have been damaged by these false statements in an amount to be determined at trial.

90. In addition, because the false statements are per se defamatory and were made maliciously with knowledge that they were false or reckless disregard for  their truth, Counseling and the Peperas are entitled to an award of exemplary and punitive damages in an amount to be determined by the Court.

## COUNT SIX:  CONVERSION

91. Counseling and the Peperas incorporate the allegations contained in Paragraphs 1-89 of the Counterclaim as if fully restated here.

92. Despite requests for the return of property belonging to Counseling and the Peperas, the Youth Center has, to date, refused.  Indeed, not only has the Youth Center denied access to Counseling or the Peperas to retrieve their personal items, but they have refused to turn the property over.

93. The Youth Center's attempt to convert property belonging to Counseling and the Peperas is knowing, intentional and done with malice.

94. The Youth Center is liable to Colors+ and the Peperas for the return of the personal property or in the alternative, for compensatory damages in an amount to be determined, together with attorneys' fees and costs.

WHEREFORE, Defendant Colors+ Counseling LLC respectfully requests judgment entered in their favor and against Colors+ as follows:

1)      As to Count One of the Counterclaim, for a declaration that Colors+ Counseling LLC's trademark is valid and enforceable and that Colors+ Lanham Act claims are invalid and unenforceable;

2)      As to Count Two of the Counterclaim, judgement in favor of Colors+ Counseling LLC on its claim of unfair competition in an amount to be proven at trial;

3)      As to Count Three of the Counterclaim, judgement in favor of Colors+ Counseling LLC on its claim of wrongful eviction in an amount to be proven at trial;

4)      As to Count Fourt of the Counterclaim, judgement in favor of Colors+ Counseling LLC on its claim of civil liability under R.C. 2307.60 in an amount to be proven at trial;

5)      As to Count Five of the Counterclaim, judgment in favor of Colors+ Counseling LLC and Kameron and Lennon Pepera on their claim of defamation in an amount to be proven at trial;

6)      As to Count Six of the Counterclaim, judgment in favor of Colors+ Counseling LLC and Kameron and Lennon Pepera on their claim of conversion in an amount to be proven at trial; and

7) Punitive damages, attorney fees, costs, interest and any such other relief this Court deems just and equitable.

Respectfully submitted,

*/s/ Angela M. Lavin*
Angela M. Lavin            (0069604)
Jay R. Carson              (0068526)
WEGMAN HESSLER VALORE
6055 Rockside Woods Blvd. N., Ste. 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile:  (216) 520-0145
Email: amlavin@wegmanlaw.com
       jrcarson@wegmanlaw.com
*Attorneys for Defendants, Colors+ Counseling LLC, Kameron Pepera, and Lennon Pepera*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants/Counterclaim Plaintiffs demand a trial by jury on all issues so triable.

*/s/ Angela M. Lavin*
Angela M. Lavin                    (0069604)

*One of the Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The foregoing *Defendants' Joint Answer and Counterclaim* was filed on this 26th day of February 2025 using the Court's electronic filing system.  The parties to the case will receive notice of this filing by operation of that system and may access this filing at its convenience.

*/s/ Angela M. Lavin*
Angela M. Lavin                    (0069604)

*One of the Attorneys for Defendants*