IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| COLORS+, | Case No. 1:25-cv-00078-PAB |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| COLORS+ COUNSELING, LLC, et al., | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

Currently pending is Defendants Colors+ Counseling ("Counseling"), Kameron Pepera ("Kameron"), and Lennon Pepera ("Lennon")[1] (collectively, "Defendants") Motion for Clarification of Court's Order of May 15, 2025 ("Motion to Clarify"). (Doc. No. 37.) Therein, Defendants seek clarification as to whether the new logos created by Counseling comply with this Court's May 15, 2025 Order enjoining Defendants from using Plaintiff's Mark or "any similar but slightly altered version of the specific Mark at issue." (*Id.*) For the following reasons, Counseling's Motion is GRANTED IN PART and DENIED IN PART.[2]

---

[1] Defendants Kameron and Lennon are referenced in the Complaint and on the docket by the names "Kristen" and "Lisa" respectively. (*See* Doc. No. 1.) However, at the preliminary injunction hearing, they indicated that they preferred to be referenced as Kameron and Lennon. (*See* 3/28/2025 Hearing Tr., 4:3-21.) Accordingly, consistent with the preliminary injunction hearing, the Court refers to the Peperas as Kameron and Lennon in this Opinion.

[2] The Court construes Defendants' Motion as seeking a ruling that its three new logos comply with the Court's Injunction. In this regard, as explained further below, the Motion is granted in part and denied in part.

I.      **Background and Procedural History**[3]

This case involves a dispute over the ownership, trademarking, and use of a service mark (hereinafter "the Mark"). The Mark in dispute[4] is shown below:



A.      **The Parties**

Plaintiff Colors+ ("Plaintiff" or "Colors+") is a 501(c)(3) non-profit corporation formed on January 12, 2018, and existing under the laws of the state of Ohio. (Doc. No. 1 at PageID #2.) Colors+ operates Colors+ Youth Center, an LGBTQ+ youth center whose purpose is to strengthen LGBTQ+ youth and allies by promoting individual and community wellness. (*Id.*) Defendants Kameron and Lennon (collectively, "the Peperas") co-founded Colors+, and Colors+ has been governed by a board of directors (hereinafter "Colors+ Board" or "Board") since March 22, 2018, if not earlier. (*Id.*)

In August 2018, seven months after the founding of Colors+, the Peperas formed Defendant Counseling as a for-profit limited liability company to provide for-profit mental health services, resources, and education to the LGBTQ+ community and the community at large. (*Id.*) At the time

---

[3] This background is limited to the facts necessary for resolution of the issues presented in Defendants' Motion. A more complete summary of the facts of the case can be found in the Court's Memorandum Opinion and Order dated May 15, 2025. (Doc. No. 32.)

[4] As explained further below, the Mark in dispute shown here is an updated version of a similar logo that had been created previously.

they formed Counseling, the Peperas served on the Colors+ Board. (*Id.*) Kameron and Lennon later served as executive director and deputy director of Colors+ respectively. (*Id.*) Counseling had offices in the Colors+ offices—i.e., Colors+ and Counseling shared the same space—until July 2024. (3/28/2025 Hearing Tr., Doc. No. 23, 38:24-39:4 85:2-17; 4/8/2025 Hearing Tr., Doc. No. 26, 264:14-16.)

    B.    The Mark

        1.    Creation of Original Logo

The Mark at issue is an updated version of an original logo (hereinafter the "Original Logo") created by Lennon. With respect to the creation of the Original Logo, Lennon's affidavit provides as follows:

> "In January 2018, I created a logo for the Youth Center which Kameron and I intended to be used on the Youth Center's website and marketing material. It was also our intention to use the logo in connection with Counseling as the two entities shared offices and resources."[5]

(*Id.* at PageID #219.) On January 13, 2018, the Original Logo was digitized and refined. (*See* Doc. No 28-18 at PageID #999–1001; *see also* Doc. No. 15-8 at PageID #220 (indicating that Lennon "engaged designers to help … digitize and refine the images").) Thereafter, the Original Logo was used by Colors+ and the Counseling practice. (*See* 4/8/2025 Hearing Tr., 345:6-11.) The Original Logo is shown below:

---

[5] Lennon's affidavit also provides: "I did not assign any rights in my designs to the Youth Center for its exclusive use as we intended to, and did, incorporate the same logo for Counseling's marketing materials." (Doc. No. 15-8 at PageID #220.)

3



(Doc. No. 15-8 at PageID #220.)

The Original Logo differs from the updated Mark at issue. Unlike the updated Mark,[6] the "+" symbol on the Original Logo above does not include the "progress flag"—i.e., the white, pink, blue, brown, and black flag located on the left side of the "+" symbol in the updated Mark.

### 2. Creating the Mark by Updating Original Logo to Include "Progress Flag"

The Parties do not dispute the following. On November 21, 2020, the Colors+ Board met and discussed incorporating the progress flag into the Original Logo. (*See* 3/28/2025 Hearing Tr., 127:4-12, 169:5-11; *see* 4/8/2025 Hearing Tr., 266:5-8; Doc. No. 27-1 at PageID #871–78.) In January 2021, another Colors+ Board meeting was held in which the "logo" was discussed. (*See* 3/28/2025 Hearing Tr., 169:12-17; *see* 4/8/2025 Hearing Tr., 266:5-9; Doc. No. 27-1 at PageID #879–884.) Following these meetings, the Original Logo was updated to include the progress flag. The newly created Mark (at issue in this case) is shown below:

---

[6] *See infra* Section I.B.2.



**C.    Preliminary Injunction**

On January 15, 2025, Colors+ filed a Verified Complaint for Preliminary and Permanent Injunctive Relief and Damages against Defendants Counseling, Kameron, and Lennon.  (Doc. No. 1.)  Colors+ asserts 14 claims against Defendants: (1) Lanham Act pursuant to 15 U.S.C. § 1119 (rectifying the trademark registry – transferring ownership of the registered Mark to Colors+); (2) Lanham Act pursuant to 15 U.S.C. § 1119 (rectifying the trademark registry – canceling Colors+ Counseling's 2024 trademark application); (3) Lanham Act violation pursuant to 15 U.S.C. § 1120 (civil liability for false or fraudulent registration); (4) Lanham Act violation (service mark infringement); (5) Lanham Act violation (false advertising); (6) Breach of Fiduciary Duty; (7) Faithless Servant Doctrine; (8) Civil Liability for Criminal Act (Deprivation of U.S. Mail pursuant to R.C. § 2913.01); (9) Civil Liability for Criminal Act (Deception pursuant to R.C. § 2913.01); (10) Civil Liability for Criminal Act (Theft pursuant to R.C. § 2913.02); (11) Civil Liability for Criminal Act (Unauthorized Use of Property pursuant to R.C. § 2913.02); (12) Civil Liability for Criminal Act (Trademark Counterfeiting pursuant to R.C. § 2913.34); (13) Deceptive Trade Practices pursuant to R.C. § 4165.02; and (14) Defamation.  (*Id.*)

On January 16, 2025, Colors+ filed a Motion for Preliminary Injunction.  (Doc. No. 5.)  Therein, Colors+ sought an Order from this Court, in relevant part: (i) prohibiting Defendants from using "Colors+" or "Colorsplus" in its company name ("Colors+ Counseling") or to otherwise

identify itself or its service; and (ii) prohibiting Defendants from using the registered Colors+ service Mark. (*Id.* at PageID #72.) Defendants filed an Opposition to the Motion for Preliminary Injunction, and Colors+ subsequently filed a Reply. (Doc. Nos. 15, 17.) Thereafter, the Court conducted a hearing on the Motion on two dates, March 28, 2025 and April 8, 2025. (*See* 3/31/2025 Entry and 4/9/2025 Entry.) Following the conclusion of the hearing, the parties submitted supplemental briefing. (Doc. Nos. 30, 31.)

On May 15, 2025, the Court issued a Memorandum Opinion and Order granting in part and denying in part Colors+'s Motion for Preliminary Injunction ("Injunction"). (Doc. No. 32.) In relevant part, the Court's Injunction prohibits Defendants from using the Colors+ Mark or "any similar but slightly altered version of the specific Mark at issue … [or] variation of the Mark that resembles it in any way or manner." (*Id.* at PageID #1121–22.) However, the Court declined to expand the injunction to prohibit Counseling from using the name "Colors+" or "Colorsplus" entirely, and instead limited the scope of the Injunction to the Mark. (*See id.* at PageID #1122–26.)

### D. Motion to Clarify

On July 1, 2025, Defendants filed the present Motion to Clarify. (Doc. No. 37.) Therein, Defendants indicate that they have designed three new logos as follows:







(hereinafter "Counseling Logo 1," "Counseling Logo 2," and "Counseling Logo 3" respectively) (collectively, "Counseling Logos"). Defendants note that the parties disagree as to whether the Counseling Logos comply with the Court's Injunction. (Doc. No. 37 at PageID #1165.) On July 15, 2025, Colors+ filed its Response to Defendants' Motion ("Response") setting forth its respective positions on the issue. (Doc. No. 38.) On July 22, 2025, Defendants filed their Reply in Support of their Motion ("Reply"). (Doc. No. 40.) Accordingly, the Motion is ripe for review.

## II. Law and Analysis

### A. Counseling Logos

In their Motion, Defendants contend that the "combination of text and stylized characters" make the Counseling Logos "very different from the protected Mark." (Doc. No. 37 at PageID #1165.) Defendants assert that they incorporate the official Intersex Inclusive Progress Pride flag[7]

---

[7] As explained above, the "progress flag" is a white, pink, blue, brown, and black flag recognized within the LGBTQ+ community that Colors+ incorporated into its Mark. *See supra* Section I.B.1–2. According to Defendants, a similar flag exists known as the "Intersex Inclusive Progress Pride flag" and has "been recognized since 2021." (Doc. No. 37 at PageID #1167.) This flag similarly contains the rainbow colors and white, pink, blue, brown, and black flag—but also

into the letters "us," which is a "key characteristic of the Counseling practice – that the counselors are members of the very same communities which they serve." (*Id.* at PageID #1167.) Next, Defendants argue that the Counseling Logos do not implicate the "safe distance rule" because the logo changes have been significant as opposed to "minor or trivial alterations." (*Id.* at PageID #1168.) Finally, Defendants maintain that the three alternative logos proposed by Colors+ are insufficient for various reasons, including that they do not "convey the message of shared identity that Counseling has with its clients." (*Id.* at PageID #1168–69.)

In its Response, Colors+ argues that the Counseling Logos are a variation of the Colors+ Mark. (Doc. No. 38 at PageID #1173.) Specifically, Colors+ contends that "the '+' symbol, with the associated rainbow coloring and progress flag, are part of the Colors+ Mark's most salient features," and that Defendants' use of the "word 'PLUS' and infusing two of the letters with a version of the progress flag … is part of [the Counseling Logos'] most salient features." (*Id.* at PageID #1173–74.) Colors+ next asserts that the "safe distance rule" permits this Court to focus on whether the Counseling Logos are "confusingly similar," and is particularly relevant "where the infringement was abusive or in bad faith."[8] (*Id.* at PageID #1175.) Thus, Colors+ requests that the Court "instruct Defendants to adopt new marks 'so far removed from any characteristic of the [Colors+ Mark] so as to put the public on notice that the two are not related.'" (*Id.* at PageID #1176.)

In their Reply, Defendants argue that Colors+ highlights only one element of the Counseling Logos rather than considering them in their entirety. (Doc. No. 40 at PageID #1189.) Specifically,

---

includes a "yellow triangle with a purple circle (elements from the intersex flag) placed within the Pride Progress flag's chevron." (*Id.*) This flag will be discussed further below.

[8] Colors+ also argues that a party need not be a "serial infringer" to justify the application of the safe distance rule, but rather merely an "adjudicated infringer." (Doc. No. 38 at PageID #1174.)

Defendants contend that while Colors+ focuses solely on the stylized "us," that feature is "accompanied by text that references Counseling, its staff and/or the people they serve." (*Id.*) Defendants thus assert that the Court should view the Counseling Logos "in their entirety and focus on their overall impressions, not individual features." (*Id.* at PageID #1190.)

The Lanham Act grants federal courts hearing trademark or service mark infringement actions "power to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). "Courts must closely tailor injunctions to the harm that they address." *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 595 (6th Cir. 2015) (internal quotation marks omitted). Indeed, "the remedial purpose of the injunction must be 'to restore to the plaintiff the rightful control over its mark and eliminate the likelihood of confusion of the defendants' products with those of the plaintiff.'" *Id.* at 596. "In a trademark case, a court determines the scope of an injunction depending upon: the manner in which the plaintiff is harmed; the ways in which the harm can be avoided; the viability of the defendant's defenses; the burden that would be placed on the defendant; and the potential effect upon lawful competition between the parties." *Id.* at 595 (quoting *ProNational Ins. Co. v. Bagetta*, 347 F. Supp.2d 469, 472 (E.D. Mich. 2004)) (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130 (1947)).

Further, "the court must give careful consideration to the possibility that a defendant found to have either infringed the plaintiff's mark or unfairly competed with the plaintiff will modify his behavior ever so slightly and attempt to skirt the line of permissible conduct." *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 154 (5th Cir. 1985). "Courts have responded to this problem by issuing broad injunctions that prohibit conduct that clearly infringes the plaintiff's mark as well as conduct that ordinarily would not justify any relief." *Id.* (permitting defendants to use a certain

name but specifying that such use "must be in a form which does not resemble in any way the manner in which [the plaintiff] prints the name").

"This equitable principle goes by a specialized name in the context of permanent injunctions to protect intellectual property—the Safe Distance Rule." *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 F.3d 524, 544 (6th Cir. 2014). The Safe Distance Rule "allows courts—after concluding that a defendant has infringed on a trademark—to 'proscribe activities that, standing alone, would have been unassailable' thus 'prevent[ing] known infringers from using trademarks whose use by non-infringers would not necessarily be actionable.'" *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 644 (6th Cir. 2020) (citing *Innovation Ventures*, 763 F.3d at 544) (quoting *Taubman Co. v. Webfeats*, 319 F.3d 770, 778–79 (6th Cir. 2003)). Thus, "[t]he Safe Distance Rule gives courts a particularly powerful tool in crafting and enforcing permanent injunctions." *Innovation Ventures*, 763 F.3d at 544. Courts have declined to apply the Safe Distance Rule in cases of preliminary injunctions as opposed to permanent injunctions. *See, e.g.*, *id.* at 545 (distinguishing the permanent injunction in *Taubman* from the preliminary injunction presented before the court); *Hydrojug, Inc. v. Five Below, Inc.*, 625 F. Supp.3d 684, 721 (N.D. Ohio 2022) (Barker, J.) (declining to apply Safe Distance Rule to preliminary injunction) (citing cases).

The Safe Distance Rule is discretionary. *Mahindra & Mahindra, Ltd. v. FCA US, LLC*, 2022 WL 4299770, at *8 (6th Cir. Sept. 19, 2022); *see also id.* at *9 ("Although a district court may require a prior infringer to choose a mark that avoids all possibilities of confusion, 'it is not required as a matter of law to do so.'"). However, this discretion is not limitless and instead must be "tailored to the needs of each case." *See id.* at *9 (indicating that a trial court cannot "apply the safe-distance rule, or decline to apply the rule, for any reason or no reason at all"). Rather, the Sixth Circuit has

instructed that a "court must justify its decision to apply or not apply the safe-distance rule based on the factual circumstances of each case." *Id.*

Having set forth the above principles, the Court turns to the factual and equitable considerations of the present case. First, the Court is mindful of the fact that the procedural posture of this case is at the preliminary injunction stage, rather than the permanent injunction stage. Any findings by the Court—including that Colors+ demonstrated, at this stage, that Defendants misled the Colors+ Board as to the registration of the Mark—must be viewed within this limited context. (Doc. No. 32 at PageID #1113.) Second, and importantly, the Court acknowledges that while Colors+ demonstrated that Counseling should be enjoined from using the Mark, that finding did not extend to the name "Colors+." (*Id.* at PageID #1123–25.) Thus, any remedy must consider that the Court's Injunction does not prevent Counseling from creating a Mark that utilizes the name "Colors." Third, the Court considers that both organizations work heavily with the LGBTQ+ community, and that certain characteristics of the Mark and Counseling Logos—such as the rainbow, progress flag, and Intersex Inclusive Progress Pride flag—are also specific to those communities.

With these considerations, the Court declines to apply the Safe Distance Rule to Defendants in the manner that Colors+ requests—namely, to require the Counseling Logos to be "so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *ECIMOS, LLC*, 971 F.3d at 644. First, this case is at the preliminary injunction stage, and "[w]hatever the strength of [Colors+'s] case at this point, no final judgment or permanent injunction have yet been entered against Defendants."[9] *Hydrojug, Inc.*, 625 F. Supp.3d at 721. Further, Defendants are

---

[9] The Court acknowledges its findings at the preliminary injunction hearing that Defendants misled the Colors+ Board. But this finding alone—importantly, on a limited record at the preliminary injunction phase—does not justify a strict application of the Safe Distance Rule when weighed against the other considerations, as explained above. Moreover, the Court is cognizant of the Sixth Circuit's finding in *Mahindra* that "courts have applied the safe-distance rule following a

11

permitted to use the name "Colors+" at this juncture, and it would be inconsistent with that finding to require them to use designs "so far removed from any characteristic of the plaintiff …" *ECIMOS, LLC*, 971 F.3d at 644. The Court also declines to totally prohibit Defendants from using any resemblance of the "rainbow," "progress flag," or "Intersex Inclusive Progress Pride flag" given that such designs are specific to the LGBTQ+ communities that Defendants serve.

Notwithstanding the above, however, the Court is mindful of the need to prevent Defendants from "simply mak[ing] a tiny change and start[ing] a new trademark contest all over again." *Innovation Ventures*, 763 F.3d at 544. Indeed, as discussed in its previous Memorandum Opinion and Order, the purpose for expanding the scope of the Injunction was to avoid the "possibility that Defendants could slightly modify the Mark to circumvent Colors+'s ownership rights of the Mark— for example, by making a minor edit to the Mark." (Doc. No. 32 at PageID #1121–22.) Accordingly, while not strictly applying the Safe Distance Rule, the Court considers the above-referenced points in evaluating each of the Counseling Logos.

The Court first examines Counseling Logo 1, shown below:



---

finding of infringement to determine the proper scope of an initial injunction regarding redesigns." 2022 WL 4299770, at *11. That case, however, involved a permanent injunction, and did not share the same considerations here, including the limited reach of the Court's preliminary injunction as it pertains to the design of the Mark but not the name "Colors+."

(Doc. No. 37 at PageID #1166.)  When evaluating the similarity of two marks, courts should "view marks in their entirety and focus on their overall impressions, not individual features."  *Flower Manufacturing, LLC v. CareCo, LLC*, 466 F. Supp.3d 797, 814 (N.D. Ohio 2020) (citing *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004)).  In this evaluation, courts often "discuss the most salient features that give rise to the overall impression."  *Id.*

As explained in its Memorandum Opinion and Order granting the Injunction, "[t]here is no true dispute that the '+' symbol, *with the associated rainbow coloring and progress flag*, are part of the Mark's most salient features."  (Doc. No. 32 at PageID #1095) (emphasis added).  Put simply, it is the *combination* of the "+" symbol and the colored design that "give rise to the overall impression" of the Mark.  That specific impression of the Mark, "Colors+," is evoked in that the word "Colors" and the "+" sign itself are rainbow-colored.

The Court finds that Counseling Logo 1 constitutes a "similar but slightly altered … variation of the Mark that resembles it …"  (Doc. No. 32 at PageID #1121–22.)  With Counseling Logo 1, Defendants deviated from using a "+" symbol to instead using the word "Plus."  *See supra*.  This distinction is not meaningful where Defendants nonetheless continue to use a similar color scheme in the word "Plus."  Indeed, using a near-identical color scheme on the word "Plus" as opposed to the symbol "+" still "give[s] rise to the [same] overall impression" because both uses evoke the concept of a rainbow-colored "plus"—whether in written or symbol form.  *Flower Manufacturing, LLC*, 466 F. Supp.3d at 814.  Accordingly, the Court concludes that Counseling Logo 1 is too similar to the Mark and does not comply with the Court's Injunction.

The Court reaches a different conclusion regarding Counseling Logo 2 and Counseling Logo 3, shown below:

13

 

Unlike Counseling Logo 1, these two logos do not associate the rainbow design with the word "Plus" or the "+" symbol.  Rather, Counseling Logo 2 and Counseling Logo 3 attribute the rainbow design to the term "us."  Moreover, these logos include other surrounding words including: (i) the groups that Counseling serves; and (ii) various slogans.  When viewing these designs in totality, they evoke a different "overall impression" because the "Plus" or "+" is no longer associated with the rainbow-design and because they contain additional elements of text.  *Flower Manufacturing, LLC*, 466 F. Supp.3d at 814.

Following this line of reasoning, the following adjustments could be made to Counseling Logo 1 to comply with the Court's Injunction:



For the foregoing reasons, the Court concludes that Counseling Logo 1 is not permitted by the Injunction, but that Counseling Logo 2 and Counseling Logo 3 are permissible. However, Counseling Logo 1 may be amended as shown above to comply with the Injunction.

B.  Use of Counseling Logos on Social Media and the Internet

Finally, the Court turns to Colors+'s concerns regarding Defendants' use of their new logos on social media and the internet.

In its Response, Colors+ asserts that "Defendants attempt to justify their New Marks by focusing on the added text, but the text is not even observable when searching Counseling's Facebook account." (Doc. No. 38 at PageID #1173.) Colors+ attaches the following example to its Response:



(*Id.* at PageID #1185.)

In their Reply, Defendants maintain that "[i]t is unclear from the response where Plaintiff believes the 'us' is used alone, without any textual elements," and that Defendants "use of the stylized 'us' is accompanied by text that references Counseling, its staff and/or the people they serve." (Doc. No. 40 at PageID #1189.) Defendants similarly attach a screenshot of Counseling's Facebook page to their Reply:

15



(*Id.* at PageID #1194.)

The Court finds Colors+'s point well-taken. From Defendants' screenshot, the logo that has been uploaded in the "Photos" tab appears to be the full Counseling Logo 2 design. (*See id.*) However, the way that Counseling Logo 2 is cropped for use in the profile picture on Facebook leaves only the rainbow-colored "us" and the year "2018" visible—not the full logo. (*See id.*; Doc. No. 38 at PageID #1173.) Thus, any internet user scrolling on Facebook would only see the rainbow-colored "us" and not the entire logo.[10] As Defendants themselves acknowledge, part of what makes their new designs different is that the "stylized 'us' is accompanied by text that references Counseling, its staff and/or the people they serve." (Doc. No. 40 at PageID #1189.) Indeed, the Court considered this

---

[10] The Court recognizes that a Facebook user could click on the profile picture and reveal the full logo. Nonetheless, the Court has concerns that the first impression for users scrolling on Facebook is the incomplete logo, which does not contain all the distinguishing components from the Colors+ Mark—such as the surrounding text "LGBTQ+ Minorities Seniors."

component in its evaluation of the "overall impression" of the new logos in addition to the other changes. *See supra.*

Accordingly, the Court orders that in using the new Counseling Logos on social media or the internet, Defendants must ensure that the full logos are visible. The Court provides the below example to demonstrate:



### III.  Conclusion

For the reasons set forth above, Defendants' Motion to Clarify (Doc. No. 37) is GRANTED IN PART and DENIED IN PART as follows. Counseling Logo 1 is not permitted by the Injunction. However, Counseling Logo 1 may be amended as set forth in this Opinion. Further, Counseling Logo 2 and Counseling Logo 3 are permissible. Finally, in using the new Counseling Logos on social media or the internet, Defendants must ensure that the full logos are visible.

**IT IS SO ORDERED.**

                                               *s/Pamela A. Barker*
                                               PAMELA A. BARKER
Date: August 12, 2025                   U. S. DISTRICT JUDGE